In the Matter of the Application of the City of New York, Respondent, for the Transfer and Payment to It of Certain Moneys.

The People of the State of New York et al., Appellants.

**Surrogate's Court — the Surrogate's Court has control of funds held thereby, wherever such funds may be deposited.**

The Surrogate's Court exercises control over the fund or securities held by that court, notwithstanding the possession of the fund or security is in the chamberlain of the city or the treasurer of the county, and the Supreme Court has no jurisdiction to make an order directing the transfer or payment of such funds.

*Matter of City of New York*, 137 App. Div. 803, reversed.

(Argued November 16, 1910; decided December 6, 1910.

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 13, 1910, which granted the petition of the respondent herein, presented in the first instance to said Appellate Division, and directed the payment to said petitioner of certain moneys, constituting a special fund in the hands of the chamberlain of the city of New York, after the payment therefrom of the expenses of the proceeding.

The facts, so far as material, are stated in the opinion.

*Edward R. O'Malley, Attorney-General (Frederick C. Tanner* and *Robert P. Beyer* of counsel), for appellants. The Appellate Division had no jurisdiction to grant the peti-

tion of the city of New York. (*People* v. *Keenan*, 110 App. Div. 537; 185 N. Y. 600; *Massey* v. *Gleaves*, 1 Tenn. Ch. 149; *Arthur* v. *Arthur*, 38 Kan. 691; *Osborne* v. *United States*, 91 U. S. 474; *Gregory* v. *M. Nat. Bank*, 171 Mass. 67; *City Bank* v. *Bangs*, 4 Paige, 285; *Bowden* v. *Schatzell*, Bailey Eq. 360; *Craig* v. *Governor*, 43 Tenn. 244.)

*Archibald R. Watson, Corporation Counsel (Theodore Connoly* and *Clarence L. Barber* of counsel) for respondent. The Appellate Division had full authority to decide as to the disposition of the residue of this special fund. (*Matter of Pye*, 21 App. Div. 266; *Matter of Barkley*, 42 App. Div. 597; *People ex rel. Mayor* v. *Nichols*, 79 N. Y. 582; N. Y. Const. art. 6, §§ 1, 2.)

CHASE, J. When the surrogate of the county of New York was about to retire from office, December 31, 1869, he reported by letter to the surrogate-elect that a former assistant surrogate, duly appointed by the board of supervisors of the county of New York in 1863, had received and appropriated to his own use the moneys of certain estates, a detailed statement of which was attached to the letter, amounting in the aggregate to $33,079.65. The surrogate-elect, upon taking office, sent a communication to the board of supervisors of the county, apprising it of the defalcation and attached to his communication a copy of the letter received by him from the outgoing surrogate. Chapter 382 of the Laws of 1870 was passed April 26, 1870, and is entitled "An act to make further provision for the government of the county of New York." Section 10 thereof provides as follows: "The board of supervisors are authorized and directed to investigate the alleged deficiency in the accounts of the late surrogate, to employ an accountant for such purpose, and to provide for the amount of such deficiency, including the same in the taxes for the ensuing year, and to institute the proper legal proceedings to recover the amount of such deficiency."

On May 26, 1870, there was presented to said board of

supervisors the report of an accountant apparently appointed pursuant to the provisions of said statute, which report is as follows: " The undersigned accountant in the matter of the alleged defalcations in the office of the surrogate, would respectfully report that he has made and has caused to be made, as thorough examination of the matters as the books and records of the surrogate's office will allow, and that the amount required to replace the several sums unaccounted for, with interest to the first day of January, A. D. 1870, is Fifty-eight thousand and thirty dollars and twenty-nine cents ($58,030.29)."

A resolution was thereupon adopted by the board of supervisors as follows: " Resolved, That the report of Charles E. Wilbur, the accountant appointed by this Board to examine into the deficiency existing in the trust funds of the Surrogate's office prior to January 1, 1870, be referred to the Comptroller with directions to embody the amount of such deficiency in the tax levy of this year, and to draw his warrant in favor of R. C. Hutchings, Esq., Surrogate, for the said amount, with directions to the Surrogate to deposit the same in a trust company in a special account out of which shall be paid claims only in favor of estates wherein such deficiencies existed in said office on the 1st of January last."

If the accountant accompanied his report with a detailed statement of the items of the deficiency aggregating $58,030.29 it does not appear in the record. It does appear, however, that included in the amount so reported was $6,500 previously allowed by the board of supervisors to certain persons in connection with the investigation and determination of the amount of such deficiency. The amount to replace the several sums not accounted for with interest to January 1, 1870, was $51,530.29, and such amount was raised by general tax and paid to the surrogate July 29, 1870, " to pay deficiencies ascertained to December 31, 1869, in the accounts of the surrogate's office." The disposition of such fund by the surrogate is not clearly shown, but on February 8, 1871, he deposited in the Union Trust Company the sum of $13,786.86,

which it is assumed was the balance remaining in his hands of such special fund on that date. On October 10, 1873, he withdrew that sum from the Union Trust Company with $1,944.16 interest, and deposited the amount, aggregating $15,731.02, in the Farmers' Loan and Trust Company.

Chapter 350 of the Laws of 1884 was passed May 23, 1884. It is provided by such act as follows: "The supreme court at the first general terms thereof held in the several departments of this state, next after the passage of this act, shall appoint some suitable and proper person for each county in the respective departments in which such appointment is made, to examine the books, accounts and vouchers of the Surrogate's Court of the county for which such appointment is made." (Section 1.)

"After said reports have been examined and approved by such General Term, an order shall be made accordingly, and by the clerk transmitted to the surrogates of the several counties, and such surrogate shall thereupon make an order directing the payment and transfer, and shall pay over and transfer to the treasurer of their counties all moneys and securities on deposit with them or their courts in trust for the several estates, and persons to whom the same is payable, as appears by the said accounts of the surrogate so approved. The several county treasurers to whom such money shall be paid or securities delivered shall receive and dispose of the same as is provided in section two thousand five hundred and thirty-seven of the Code of Civil Procedure." (Section 4.)

On January 29, 1886, the General Term of the Supreme Court in the first judicial department appointed a referee to examine the books and accounts of the Surrogate's Court of the county of New York as provided by said act of 1884. The referee in his report, referring to the amount raised by tax and paid to the surrogate to provide for the deficiency in the surrogate's office and also referring to the deposit in the Farmers' Loan and Trust Company, said: "Precisely how it was applied is not clear. * * * The only tangible thing left of that misty time is a certificate of deposit in the Farm-

ers' Loan & Trust Company for $15,731.02, bearing date
October 13, 1873.    It is reasonable to believe that at least this
much of the $51,530.29 was never used for the purpose for
which it was appropriated."   The General Term made an
order December 30, 1886, referring to the certificate of deposit
in the Farmers' Loan and Trust Company and provided : " It
is further ordered and adjudged that so much of said moneys,
funds and securities as are represented by the said certificate
of deposit with the interest thereon to the time of payment
or transfer to said chamberlain together with such interest
as shall subsequently accrue or be payable thereon, be held
by the said chamberlain as a special fund subject to the special
order of the General Term of this court."

The deposit in the Farmers' Loan and Trust Company was
thereupon transferred to the chamberlain of the city of New
York, and such amount has since remained as a special fund
in the hands of the chamberlain, who has received and accu-
mulated the interest thereon, so that at the time of the com-
mencement of this proceeding it amounted to $39,772.08.
This proceeding was commenced by petition in behalf of the
city of New York to have the amount of said special fund
and all accrued interest thereon paid over to it.

The petition was made to the Appellate Division of the
Supreme Court in the first judicial department and it was
opposed by the appellants.   A referee was appointed to take
proof of the matters and things alleged in the petition
and answers, and report to the court.   The referee reported
among other things the facts that we have mentioned and he
concluded : " The General Term of the Supreme Court in
this order of December 30, 1886, directing the transfer to
the Chamberlain of the balance in question provided that
such balance should be held as a special fund subject to the
special order of the general term, and I do not consider that
I am authorized to review the question of such provision.
Under all the circumstances, therefore, I am of the opinion
that the city is now entitled to the return of the balance in
question with the accumulations of interest thereon."

An order was thereupon made by the Appellate Division directing the payment of certain expenses from said special fund and further directing the transfer and payment to the city of New York of the balance of the moneys remaining in said special fund after the payment of said disbursements and expenses.    It is from such order that this appeal is taken.

The question of law presented for our consideration is whether the Supreme Court has any jurisdiction to direct that such special fund be withdrawn from the Surrogate's Court and paid over to the city of New York, without an act of the legislature expressly conferring such jurisdiction.

It appears in the recital in the resolution of the board of supervisors of May 26, 1870, that the authority of the accountant was " to examine into the deficiency existing in the trust funds of the surrogate's office."    It will, in the absence of proof, be assumed that he did not include in his report any items other than such as came within his authority. When the fund was paid by the city to the surrogate, July 29, 1870, it ceased to be a fund of the city of New York, and became a fund in the possession of the surrogate for a particular purpose.    The purpose as stated by the resolution was for deposit " in a special account out of which shall be paid claims only in favor of estates wherein such deficiencies existed in said office on the 1st of January last (1870)."    It was received and held by the surrogate in his official capacity.

When the fund was transferred to the chamberlain of the city of New York, pursuant to chapter 350 of the Laws of 1884, it was, notwithstanding the form of the order of the General Term, received by him pursuant to the terms of the statute which provides:  " The several county treasurers to whom such money shall be paid, or securities delivered, shall receive and dispose of· the same as is provided in section two thousand five hundred and thirty-seven of the Code of Civil Procedure."    The chamberlain of the city of New York may in this proceeding be treated as the treasurer  of the county. Section 2537 of the Code of Civil Procedure provides as follows:  " Where a statute requires the payment of money into,

or the deposit of a security with the Surrogate's Court    \*   \*   \* the same must be paid to or deposited with the county treas-urer of the county to the credit of the beneficiary, or of the estate, or of the special proceeding.   \*   \*   \* All money collected by or paid to the county treasurer, as prescribed by this section, must be held, managed, invested and disposed of by him, in like manner as money paid into the Supreme Court in an action pending therein. The regulations contained in the general rules of practice, as specified in subdivision 8 of section 4 of the state finance law, and the provisions of title third of chapter eight of this act, apply to money paid to and securities deposited with the county treasurer, as prescribed in this section; except that the Surrogate's Court exercises, with respect thereto, or with respect to a security, in which any of the money has been invested, or upon which it has been loaned, the power and authority conferred upon the Supreme Court by section seven hundred and forty-seven of this act."

The section quoted has been several times amended, but at all times, since the payment of the money to the chamber-lain, it has provided in substance that the Surrogate's Court exercises control over the fund or securities so held by such court, notwithstanding the fact that the possession of the fund or security is in the chamberlain of the city or the treasurer of the county.

It is provided by section 747 of the Code of Civil Pro-cedure as follows: " Each court may direct that money paid into that court in any action or proceeding brought therein, or any bond, mortgage or other security which represents property belonging to any suit or party interested therein, may be paid out, transferred, invested or reinvested in any manner or form that appears to it best for the interests of the owners thereof. But such directions must be embodied in an order or decree of said court, founded upon proper and suf-ficient evidence satisfactory to the court that such disposition of the property is best for the interests of the owners thereof or parties interested therein."

It is also provided by section 751 of the Code of Civil Pro-

cedure as follows: "No money, security or other property which shall have been placed in the custody of the court shall be surrendered without the production of a properly certified copy of an order of the court, in whose custody said money, security or other property shall have been placed, duly made and entered, directing such disposition."

The statute of 1884 established and provided the procedure to transfer the moneys and securities then on deposit with the several surrogates and Surrogates' Courts in the counties of this state to the county treasurers of said counties. It does not purport to enlarge the jurisdiction of the Supreme Court at the General Term thereof or otherwise, but relates to and affects the custody of such money and securities. (*People v. Keenan*, 110 App. Div. 537; affd., 185 N. Y. 600.)

If it had been intended that the Supreme Court should have concurrent jurisdiction with the Surrogate's Court to direct in regard to the distribution of the funds and securities which are transferred to the possession of the chamberlain of the city the statute would have so provided. Moneys and securities deposited with a surrogate or a Surrogate's Court, but actually delivered to the chamberlain of the city of New York or the treasurer of the county in which such surrogate or Surrogate's Court is situated, remain in the control of such surrogate or Surrogate's Court, so far as their final disposition is concerned, as fully as if they remained in their personal custody.

If it is true that there was some error in determining the amount of the deficiency at the time the general tax was laid and a greater amount than necessary was paid over to the surrogate, or if for any other reason the city of New York is now entitled to the whole or any part of the fund remaining in the jurisdiction of the Surrogate's Court for the purpose of paying alleged deficiencies, an act of the legislature should be passed granting jurisdiction to direct in regard to the disposition of such special fund after an opportunity to all persons having a possible interest therein to be heard in the proceeding.

The Supreme Court did not have jurisdiction to make the order appealed from and the order should, therefore, be reversed, with costs, and application denied.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, WERNER and WILLARD BARTLETT, JJ., concur.

Order reversed, etc.