Matter of the Application of the PEOPLE OF THE STATE OF NEW YORK for a Peremptory Writ of Mandamus to be Issued to MILO R. MALTBIE, as Chamberlain of the City of New York.

(Supreme Court, Albany Special Term, February, 1918.)

Mandamus — when peremptory writ of, granted — State Finance Law, § 44 — city of New York — decedents' estates.

> Under section 44 of the State Finance Law which provides: " Whenever any sum of money, paid into court, shall have remained in the hands of any county treasurer, or of the chamberlain of the city of New York, for the period of twenty years, it shall be paid over by such officer with all accumulations of interest thereon, after deducting his legal fees, to the treasurer of the state of New York," an application by the attorney-general on behalf of the people of the state for a peremptory writ of mandamus to compel the chamberlain of the city of New York to pay over to the state treasurer the amount of money accumulated between the years 1840 and 1897, and now on deposit in the treasury of the city of New York to the credit of the " intestate estates " fund, will be granted.

APPLICATION for a peremptory writ of mandamus.

Supreme Court, February, 1918.     [Vol. 102.

Merton E. Lewis, Attorney-General (C. T. Dawes, Deputy Attorney-General, of counsel), for applicant.

Lamar Hardy, Corporation Counsel (Russell Lord Tarbox, of counsel), for respondent.

RUDD, J.    The attorney-general of the state of New York makes an application upon behalf of the People, asking for the issuance of a peremptory writ of mandamus to compel the chamberlain of the city of New York to pay over and into the state treasury certain intestate funds, amounting to a sum estimated on behalf of the city of New York at about $600,000, which sum is an accumulation of balances of estates, in number 33,000, administered by the public administrator of New York county, and now deposited in the treasury of the city of New York in the keeping of the chamberlain of the city of New York to the credit of a certain fund entitled ''intestate estates.''

This amount of money so deposited is the result of payments made from time to time by the public administrator in accordance with the statute.    The fund has been increasing in amount by reason of such deposits, from the year 1840 to the present time.

The amount covered by the application here made is the sum which accumulated, and is now to the credit of that fund, between the years 1840 and 1897.

The demand is made under, and this application is based upon, the provisions of section 44 of the State Finance Law.    The state claims that it is entitled to the custody of all of these funds which have remained in the hands of the chamberlain of the city of New York for the period of twenty years or more.

Section 44 of the State Finance Law reads as follows: '' Whenever any sum of money, paid into court, shall have remained in the hands of any county treas-

urer, or of the chamberlain of the city of New York, for the period of twenty years, it shall be paid over by such officer with all accumulations of interest thereon, after deducting his legal fees, to the treasurer of the state of New York. The said treasurer shall pay such sum to the owner or owners thereof upon the presentation to him of the warrant of the comptroller therefor. The comptroller shall draw his warrant for such sum upon the presentation to him of an order of the court made in accordance with section seven hundred and fifty-one of the code of civil procedure and upon due notice to said comptroller.''

The public administrator of the county of New York has to do, in his official capacity, with many estates of those who die intestate within his jurisdiction. Many of the estates are small in amount, but they are so numerous that the accumulation of intestate funds held by the chamberlain of the city of New York has rapidly increased.

Of the aggregate amount involved in this application the city of New York has expressed its intention of turning $483,680.99 into the general fund of the city, and using the same in the reduction of taxes.

The act of the comptroller of the city in notifying the attorney-general of this intention resulted in the application here made, which is based upon the refusal of the chamberlain to pay the money over to the state treasurer. .

Under the New York City Charter of 1897 the officer administering these estates is known as the public administrator of the county of New York.

The petition of the attorney-general alleges that the funds involved belong to the next of kin of the intestates, and if there be no next of kin such funds '' become the property of the state '' by so-called escheat; that wherever the funds are, whether in the

37

**578**

city treasury or in the state treasury, they are subject to the control of the court and subject by its order to payment thereof to the persons legally entitled thereto; that such intestate funds now deposited in the city treasury of the city of New York are court funds or moneys paid into court, and therefore are subject to the provisions of section 44 of the State Finance Law.

The chamberlain of the city of New York, in an affidavit filed, denies that the intestate funds referred to are court funds or moneys paid into court, and further that a large portion of the intestate estates are paid to the public administrator by various hospitals, alms houses and other public institutions, where the said intestates had been supported and cared for at the expense of the city of New York, for which support and care the said estates are indebted to the city; that the chamberlain is forbidden by section 195 of the Greater New York Charter to pay any moneys out of the treasury except on a warrant of the comptroller countersigned by the mayor, each one of whom should be a party to this proceeding.

In counties other than the county of New York the county treasurer acts as the public administrator under the law, and he is vested with all the powers and rights of other administrators and subject to the same duties and obligations. Code Civ. Pro. § 2593.

Sections 2740 and 2741 of the Code of Civil Procedure define these duties and obligations with reference to the payment of balances. Where the person entitled is unknown the decree of the surrogate must direct the administrator to pay the amount thereof into the treasury of the state for the benefit of the person or persons who may thereafter appear to be entitled thereto.

Section 2741 of the Code of Civil Procedure pro-

vides when a legacy or distributive share is to be paid into court.

The moneys deposited in the treasury of the city of New York and held by the chamberlain of the city are shares of unknown persons or of persons known but whose whereabouts are unknown, and it therefore seems that the funds paid by the public administrator of the county of New York into the city treasury are the same in character as funds of intestate estates administered in the other counties of the state outside of New York either by public administrators or otherwise, and the balance of which funds thus administered, in the other counties, is paid either to the state or county treasurer under sections 2740, 2741 of the Code of Civil Procedure.

Under chapter 230 of the Laws of 1898, section 24, by subdivision 14 thereof, the public administrator of the county of New York is required to pay the balance of any money in his hands on the settlement of his accounts, whether payable to persons unknown or if known whose places of residence are unknown, into the treasury of the city; and by subdivision 17 thereof the public administrator is required to make such payments to the credit of the account of " intestate estates," but the rights and remedies of all persons to compel an accounting by the public administrator are reserved.

The principal question here involved is whether these moneys constitute court funds, the attorney-general contending that they are court funds, and that the moneys paid over to the city treasurer are the same in character as are other funds which have been administered upon by the court, and which are paid to county treasurers throughout the state, or which by law are paid to the state treasurer.

These funds are not the property of the city or the

property of the state, irrespective of where they are on deposit, or by whom held. They possibly constitute the property of some person or other, held substantially in trust, awaiting the appearance of the person to whom they legally belong.

Escheat has been defined to be an obstruction in the course of descent, and consequent destruction of the tenure. It signifies a reversion of property to the state in consequence of the want of any individual competent to inherit.

It may be assumed to be the law that all rights of property of whatever nature they may be revert to the People when the owner dies intestate, and there is a failure of heirs or next of kin to take such property. *Johnston* v. *Spicer,* 107 N. Y. 196.

It cannot be said that the balances of these intestate funds, which await the legal owners, even if the coming of such owners is many years delayed, become the property of the city of New York, because and for the reason that the law providing for a place of deposit of these funds by the public administrator designated the treasury of the city of New York.

Where there is a reversion of property rights to the People it is to the People of the state and not to any division thereof. A municipality is a creation of the state, and if it was the intention of the state to release its claim to these unclaimed funds then such release would have been specifically and clearly expressed.

The provisions of section 44 of the State Finance Law are inconsistent with respondent's theory.

The contention of the chamberlain that because, as he states, a large portion of the intestate estates had been paid to the public administrator by various hospitals and other public charitable institutions, where the intestate had been supported at the expense of the city, and for which support and care the said intestate

was justly indebted to the city, therefore the city has a claim of ownership upon these funds which will prevent the transfer of the same, under section 44 of the State Finance Law, cannot be justified.

It cannot be assumed, or is it presumed, that the public administrator has paid over to the city of New York funds as against which the city of New York has a proper and legal charge for the support and care of the intestates, without the city enforcing, as against the estates of said intestates, the legal claim of the city for such support and care.

In the process of administration why would not the estates of the intestates, who had been cared for by the city, in the hospital, be subject to the claim of the city for compensation for such care, which claim would have been liquidated?

It must be assumed here that these intestate funds are subject to no known claims, but are held subject to the payment of such as may hereafter be legally proved, of whatever character they may be.

It has been held in *People ex rel. Evans* v. *Chapin,* 101 N. Y. 682, that such moneys are at all times court funds, either in the hands of the county treasurer or in the hands of the state treasurer.

These funds are held by the chamberlain of the city of New York in the treasury of the city. The chamberlain is subject to be called to an accounting before the surrogate of the county of New York with reference to the rights of any person interested in the estate involved, or any part of it, and the surrogate can make distribution thereof upon such an accounting.

The city is held liable as a trustee under section 29 of chapter 230 of the Laws of 1898 for waste of these intestate funds.

The funds received by the chamberlain of the city of New York, or by the treasurer of the city of New

Supreme Court, February, 1918. [Vol. 102.

York, are thus received the same as moneys are received by the county treasurers in other counties of the state. *Matter of City of New York,* 200 N. Y. 138.

The funds are Surrogate Court funds and are subject to the decree of the Surrogate's Court having jurisdiction.

The People of the state are sovereign and the county treasurers throughout the state in this relation are acting as agents for the sovereign, and so is the city treasury of New York and the chamberlain of the city.

The duty of temporarily caring for these funds is placed upon the office having custody of the funds, and, because the chamberlain of the city has custody of these moneys, they do not by reason thereof, and cannot, become the property of the city.

No portion of the principal of these moneys belongs to the city.

Section 44 of the State Finance Law, providing when money paid into court shall be paid to the state treasurer, was first enacted by chapter 651 of the Laws of 1892. It covers and includes any sum of money paid into court, whether under a provision of the Code or by direction of some other statute.

In *People* v. *Keenan,* 110 App. Div. 537; affd., 185 N. Y. 600, the court directed the payment into the state treasury of certain funds held by the chamberlain of the city of New York. A portion of the funds here involved was evidently included in the direction of the court in that litigation, and it appears from that record that the peculiar wording of an order enabled the chamberlain of New York, who was alone the respondent in that action, to escape punishment for contempt in failing to obey the writ.

Section 44 of the State Finance Law applies to all funds to which there are or may be known or ascertainable claimants.

Intestate funds deposited in the city treasury with the chamberlain of the city come from various intestate estates, and each one or all can be traced through the records to the Surrogate's Court.

It can hardly be contended by the city that it has a legal claim upon these funds as a creditor, for it appears that the city proposes to use the money as the city's money in the payment of the city's obligation by way of the reduction of taxes. The city has had the use of the money, in interest and dividends accruing thereon, which evidently was considered by the legislature to be compensation to the city and county; the public administrator's fees have been paid.

The contention of the respondent that the comptroller and mayor should be a party to this application, and that no moneys can be paid out of the city treasury without a warrant drawn by the comptroller and countersigned by the mayor, cannot be sustained. Such requirement relates to the expenditure of the city's moneys in the payment of the city's obligations in the regular course of business.

This petition asks for the transfer of money, which does not belong to the city, from the physical possession of the treasury of the city to the treasury of the state, to which by enactment it should pass.

An order directing the issuance of the writ for which application is made may be entered.

Application granted.