IsADORA S. MOUFANG et al., Respondents, v. STATE OF NEW YORK, Appellant.

Third Department, May 9, 1945.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Solicitor-General; Herbert A. Einhorn* and *Mortimer H. Michaels, Assistant Attorneys-General* of counsel), for appellant.

*Frank A. Kister,* attorney for claimants-respondents.

HILL, P. J. Respondents seek a determination by the Court of Claims awarding damages against the State for the failure of the Comptroller to invest at interest $6,233.16 turned over to him by the New York City Chamberlain July 1, 1932, pursuant to section 44 (later § 84) of the State Finance Law. The damage sought is the interest which respondents assert would have been

earned had the fund been invested, and is computed at 3½% for the first nine months, thereafter at 3%, 2½%, 2% and finally 1½% for the last three years. The total interest so computed is $1,724; each respondent seeks one half thereof. The fund came from a partition action begun in 1892, and was paid to the County Treasurer of Kings County █ under the final judgment of February, 1894, which contained a direction that it be kept invested during the life of the widow and daughter and paid with the accumulation to respondents, children of the daughter, at her death. The Comptroller has paid over the corpus of the fund under an order of the Supreme Court which contained a provision that the payment would be made " without prejudice to any claim or right  *  *  *  against the Comptroller of the State of New York and the State of New York  *  *  *  arising out of the failure and neglect, if any, of the Comptroller of the State of New York to invest said fund ". This appeal is from an order of the Court of Claims permitting respondents to file a claim. The procedure is not questioned and the order is treated as being determinative of the issue. The objections by the Attorney-General are that the claim " did not state a cause of action " and " that no duty of investment existed on the part of the Comptroller ".

It has been determined that a transfer to the State Treasurer under the statute from which section 84█ of the State Finance Law was copied makes that officer a custodian and that the order under which the court funds were originally deposited " operates alike upon every officer having the custody of the money " and that the portion of the decree which directs that the fund be invested and reinvested continues to be operative. The opinion states: " The exercise by the Legislature of this power in designating the Treasurer of the State as the custodian of such moneys, under the provisions of the act now under consideration, is in nowise different from the exercise of that power with respect to the chamberlain of the city of New York. The second objection urged by the appellant is that the act in question vacates or nullifies or interferes with orders of the court. The essential part of an order or decree made by the court with respect to the deposit of moneys is that the depository designated shall retain the custody and control of

the moneys until the further order of the court making such order or decree, with a direction to invest and reinvest the same in a general or specific manner. The force of an order of this character operates alike upon every officer having the custody of the money." (*People* v. *Keenan,* 110 App. Div. 537, affd. 185 N. Y. 600.)

The opinion in *Matter of Sohmer* (156 App. Div. 781) following the *Keenan* case (*supra*) and others, states: " The rights of the parties interested in the funds are not affected in the least by the change of custodian, and * * * it is unquestionably within the power of the Legislature to designate the custodian of such funds."

Funds deposited by a court with a custodian as provided by statute remain in the custody of the court although transferred by the Legislature to another custodian as fully as if they remained in the personal custody of the court. (*Matter of City of New York,* 200 N. Y. 138, 145; *Matter of Walsh,* 204 N. Y. 276.)

The Legislature may not change or modify vested rights held under a judgment or order of a court. (*Livingston* v. *Livingston,* 173 N. Y. 377; *Matter of Greene,* 166 N. Y. 485.)

The order should be affirmed, with costs.

FOSTER, J. (dissenting). This is an appeal from an order of the Court of Claims permitting claimants to file a claim against the State of New York. Unless the proposed claim constitutes a cause of action against the State the order should be reversed. Since the facts in support of the claim are not in dispute the validity of the order appealed from is for all practical purposes decisive of the whole matter.

In February, 1894, a final judgment of the Supreme Court, Kings County, in a partition action (*Hallenbeck* v. *Hallenbeck*), directed, among other things which the record does not reveal, that a fund of $1,753.34 be kept invested during the life of Isadora E. Mangles, the interest accumulated, and the whole distributed to her surviving children upon her death. She died March 16, 1943, leaving claimants as her sole surviving children.

The fund was originally deposited with the County Treasurer of Kings County, and later the City Chamberlain of the City of New York became its custodian. It was invested and the interest accumulated from 1894 to July 1, 1932, and increased during that period to the sum of $6,233.16. On the date last mentioned the fund was transferred to the State Treasury pursuant to section 44 of the State Finance Law (later § 84, subd. 1), and after this date it was no longer invested. In June, 1944,

an order was made directing the State Comptroller to pay over to claimants the precise amount received by the State. They claim in addition the interest lost since 1932, and it is this claim they have been given permission to file against the State.

Shorn of procedural difficulties, which appear to be of minor importance, the question is whether a duty devolved upon the Comptroller after the fund came into the State Treasury to invest the same in accordance with the direction contained in the judgment of partition.

· The Comptroller is a constitutional officer, and his duties with regard to the investment or payment of moneys under his control are fixed by the Legislature. (N. Y. Const., art. V, § 1.) I can find no legislative enactment which empowered or directed the Comptroller to invest court funds which had been transferred to the State by direction of the State Finance Law. The statute, as it existed, offered quite conclusive proof that such legislative authority did not exist, for it provided in express terms that when court funds transferred to the State should exceed in total the sum of one hundred and fifty thousand dollars the excess should be transferred to the general fund. (State Finance Law, former § 84, subd. 2.)

Since 1892, at least, there have been legislative enactments which required that court funds remaining in the hands of County Treasurers and of the Chamberlain of the City of New York for a period of twenty years be paid over, with all accumulations of interest, to the State. This requirement has been substantially the same in all of the statutes relative thereto from 1892 down to the present time. (L. 1892, ch. 651, § 9; L. 1909, ch. 58, § 44; L. 1940, ch. 593, § 84.) There have been minor amendments, not cited, which are unimportant here.

Thus in 1894, when the judgment in partition was made, there was in existence a statute which gave clear notice that court funds remaining in the hands of a county treasurer or the city chamberlain of New York for twenty years or more would have to be paid over to the State. It should also be noted that this statute, continued in substance under various titles, provided that if the owner appeared the State would pay over to him " such sum ", that is, the sum transferred to the State. Nowhere was there imposed upon any fiscal officer of the State the duty to invest such sum, either as successor custodian or otherwise, for the benefit of the owner.

As a general proposition it can scarcely be doubted that the State in its sovereign capacity may take over abandoned funds or funds presumptively subject to escheat. And under such a

proposition whether interest shall be paid to the rightful owner in case he appears is a matter of policy wholly within the power of the Legislature to determine. In this case it is said that if the undoubted policy of the Legislature not to pay interest is followed, the inherent power of the Supreme Court to control its own judgment is nullified. Indeed this is the only basis upon which the order appealed from could be justified.

This reasoning overlooks some important factors I think. The court had no inherent power to direct a county treasurer or city chamberlain to hold and invest the fund in question. It acquired such power from the Legislature. Its naked judicial power ceased when it determined the ownership of the fund. From then on it had to rely on the machinery set up by the Legislature for the remedial and operative effect of its judgment, and within reasonable bounds the Legislature might regulate and limit such a process. This is true of an ordinary money judgment. Only the court has the power to grant it, but the Legislature provides the method of execution and places certain limitations thereon. The statute under which the fund was taken by the State did not nullify the judgment. It merely placed a limitation on the period on which unclaimed court funds might be held by certain fiscal officers, and by them invested. It was not unreasonable to say in effect that if such funds were not claimed within twenty years that they were to be presumptively deemed abandoned. It is within the power of the Legislature, as *parens patriae,* to regulate the disposition and management of the property of those who, for one reason or another, are incapable of managing their own affairs. (*Cochran* v. *Van Surlay,* 20 Wend. 365; *Brevoort et al.,* v. *Grace et al.,* 53 N. Y. 245.) In the exercise of this power it may, in my judgment, place a reasonable time limit upon a judicial direction for the custody and investment of funds assigned to infants or persons unknown. This appears to me to be regulation, not nullification. If the contrary is true then in many cases the duty of investment may go on *ad infinitum.*

I am aware that these views are not in accord with much that is expressed in *People* v. *Keenan* (110 App. Div. 537, affd. 185 N. Y. 600). That case was decided by a divided court and affirmed in the Court of Appeals without opinion. It is not clear, however, that the precise question involved here was there passed upon. In any event, balancing the matters herein expressed against the theory that the Comptroller had a duty to invest the fund in question in the absence of constitutional or legislative authority to do so leads me to the conclusion that

the order appealed from should be reversed and the claim dismissed.

HEFFERNAN, BREWSTER and LAWRENCE, JJ., concur with HILL, P. J.; FOSTER, J., dissents in an opinion.

Order affirmed, with costs. [See *post*, p. 870.]