This is an appeal from the circuit court of Wayne county and involves the ownership of intangible personal property. Max Rapoport at the time of his death was domiciled in and was a resident of the State of California. He died on July 25, 1943, leaving no will and no heirs. Ben H. Brown, public administrator of Los Angeles county, California, was appointed administrator of the estate and discovering that decedent had an account in a Detroit bank and had deposited with such Detroit bank certain stocks and bonds for safekeeping, asked the public administrator of Wayne county to apply for ancillary administration which was done. Proceedings were instituted by a public administrator of the State of Michigan and an order was entered by the Wayne county probate court assigning the residue of the personal property, after the payment of certain expenses, to the Michigan State board of escheats, as an escheated estate. Upon appeal the circuit court of Wayne county affirmed the order of the probate court.
The domiciliary administrator and the State of California appeal and urge that intangible personal property owned by a resident of California has its legal situs in that State, even though the bank account, stock certificates and bonds are deposited in a Detroit bank for safekeeping; and that the State of Michigan has no power to take this property by escheat.
The attorney general, on behalf of the Michigan State board of escheats, urges that all of these assets, being situated in the State of Michigan at the time of the death of Mr. Rapoport, belong to and should remain with the State of Michigan under the statutory provisions relating to descent and distribution of personal property and to escheats; *Page 294 
or at least such intangibles issued by Michigan corporations escheat to the State of Michigan.
The trial court, in determining that the intangible property should be turned over to the Michigan board of escheats as an escheated estate reasons as follows:
"18. Furthermore, in my opinion, the statutes of our State would prevent the escheated property from coming within the doctrine of situs of domicile. Our probate code, adopted in 1939, provides that the residue of personal property `shall be distributed in the same proportion and to the same persons, and for the same purposes, as prescribed for the descent and disposition of real estate.' This wording appears in both subsections 4 and 5 of Act No. 288, chap. 2, § 93, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289-2 [93], Stat. Ann. 1943 Rev. § 27.3178 [163]). The descent and disposition of real estate is found in Act No. 288, chap. 2, § 80, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289-2 [80], Stat. Ann. 1943 Rev. § 27.3178 [150]), subsection 5 of which reads as follows:
"`If the intestate shall have no wife, nor husband, nor kindred, his or her estate, as the case may be, shall escheat to the people of this State for the use of the primary school fund.'
"19. It is my interpretation of the foregoing section that, in the absence of kindred, our legislature has made it mandatory that any personal property, as well as real estate, owned by an intestate at the time of his death, and located in Michigan, escheats to the people of Michigan.
"20. Furthermore, the statutes relating to escheated estates likewise make it mandatory that any property, whether real or personal, belonging to an intestate, and situated in Michigan, regardless of whether the intestate was a resident or nonresident of Michigan, shall go to the Michigan State board of escheats, to be held for any kin of the deceased *Page 295 
who may eventually appear and claim the same. And if that contingency does not arise, then the property is to belong to the State of Michigan regardless of its nature.
"21. Act No. 238, Pub. Acts 1897, being 3 Comp. Laws 1929, § 13455 et seq. (Stat. Ann. § 26.1021 et seq.), as amended by Act No. 170, Pub. Acts 1941 (being Comp. Laws Supp. 1940, 1945, § 13458-1 et seq., Stat. Ann. 1946 Cum. Supp. § 26.1024 [1] etseq.), constitutes the entire statutory law of Michigan with reference to escheated estates. The title then amended in 1941, among other things, now states, `providing the procedure to declare such property escheated to the State.' Act No. 238, § 4b, Pub. Acts 1897, as added by said amendatory act (Comp. Laws Supp. 1945, § 13458-2, Stat. Ann. 1946 Cum. Supp. § 26.1024 [2]), defines the word `escheated' as covering and including all property of whatever nature. Sections 2 and 3 of the original act (3 Comp. Laws 1929, §§ 13456, 13457 [Stat. Ann. §§ 26.1022, 26.1023]), which were not amended, designate the duty of the attorney general with reference to escheated estates, and specifically refer to and provide for action upon his part with reference to the estates for nonresidents as well as to the estates of residents of this State. He is required by the latter section to `immediately see that due administration thereof shall be had in the probate court of the county of which the deceased person owning such estate was an inhabitant or resident at the time of his death, or, if a nonresident, in a county in which such deceased person had any such estate at the time of his death.'
"22. To ascertain what must be done with the property so administered by the probate court under the escheat law of this State at the conclusion of due administration thereof, it is necessary to follow the provisions of 3 Comp. Laws 1929, § 13469 (Stat. Ann. § 26.1043), which likewise was not amended by the latter statute of 1941. In my judgment, this section is also mandatory and gives the *Page 296 
probate court administering said escheated estate no choice, whether the property be real or personal, and whether the intestate was a resident or nonresident of the State of Michigan. Certainly the legislature, in view of the sections relating to the duty of the attorney general above referred to, distinctly had in mind, at the time of the enactment of this act, that escheated property, both of a real and personal nature, and belonging to both residents and nonresidents of this State, would have to be administered in this State. Having made provision for the administration of escheated property belonging to either resident or nonresident intestates, the legislature provides in the latter section for the disposition of such property upon the completion of administration, as follows:
"`The attorney general shall see that all the property of whatever name or nature remaining in such estate after due administration thereon is turned over to the care and custody of the State board of escheats, and to their successors in office, who shall take the same as trustee thereof.'
"23. At the time that this statute was enacted, the doctrine of situs of domicile was in existence in this State; and hence, it must have been the intention of the legislature to overrule this doctrine by legislation, insofar as escheated estates were concerned."
Appellants rely upon In re Lyons' Estate, 175 Wn. 115
(26 Pac. [2d] 615). In that case a resident of Alaska died intestate and without heirs, leaving a bank account in Seattle, Washington. The supreme court of Washington said:
"The fundamental principle that the law of the domicile governs the distribution of the assets of a decedent is established beyond question.
"`In the administration and settlement of decedents' estates personal property is distributed by the law of the domicile of the decedent at the time *Page 297 
of his death. This rule has been universal for so long a time that it may now be said to be a part of the jus gentium, * * * 5 R.C.L. p. 929.' * * *
"The right to escheat property and the right to levy a tax are both attributes of sovereignty, one as much as the other and the broad language used by the courts in discussing the question cannot logically be limited to the question of taxation alone. * * *
"The supreme court of the United States, in common with the State courts, repeatedly and consistently held that the situs of intangible property is at all times at the domicile of the owner,State Tax on Foreign-Held Bonds, 15 Wall. (82 U.S.) 300, 320 (21 L.Ed. 179); New Orleans v. Stempel, 175 U.S. 309
(20 Sup. Ct. 110, 44 L.Ed. 174). * * *
"The debt owing by the Seattle bank was a credit belonging to the decedent Lyons before and at the time of his death; and, applying the rule mobilia sequuntur personam, the situs of this property was at the domicile of its owner, and therefore it was not property within this State at the time of his death and not subject to escheat under our statute."
In re Hull Cooper Co., 48 Ariz. 270 (50 Pac. [2d] 560, 101 A.L.R. 664), where upon the dissolution of a corporation certain of its stockholders could not be found to take their share of the estate, the State of Arizona claimed them by escheat. The supreme court there said (p. 278):
"In the first place, the only evidence as to the residence of these stockholders is that they were nonresidents of the State of Arizona. In such case, since the property in question was personal in its character, it would ordinarily follow the residence of the owner, and an escheat proceeding in this State would not lie." *Page 298 
Appellees urge that Act No. 238, Pub. Acts 1897 (3 Comp. Laws 1929, § 13455 et seq. [Stat. Ann. § 26.1021 et seq.]), as amended by Act No. 170, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 13458-1 et seq., Stat. Ann. 1946 Cum. Supp. § 26.1024 [1] etseq.), overrules the doctrine of situs of domicile and makes it mandatory for such property to become the property of the Michigan board of escheats to be held by such board for any kin of the deceased.
Appellees also rely upon Hutchison v. Ross, 262 N.Y. 381
(187 N.E. 65, 89 A.L.R. 1007), where the court said:
"The situs of personal property in a jurisdiction other than that where the owner of the property is domiciled has given rise to many difficulties and perplexities. The maxim `mobiliasequuntur personam' cannot always be carried to its logical conclusion. Practical considerations often stand in the way. Physical presence in one jurisdiction is a fact, the maxim is only a juristic formula which cannot destroy the fact. Within territorial limits, the jurisdiction of the courts of each State or nation is limited only by constitution or treaty. The courts of each jurisdiction determine all judicial questions by the law of that jurisdiction. When the owner of personal property authorizes its removal from his domicile or acquires property elsewhere, he must be deemed to know that his property comes under the protection of, and subject to the laws of the jurisdiction to which it has been removed, and that appeal may be made to the courts of that jurisdiction for the determination of conflicting rights in such property. The law of his domicile may be different from the law of the State or nation in which the personal property is placed. A conveyance of the property may be valid under the laws of one jurisdiction and void under the laws of the other jurisdiction. If the courts of each jurisdiction determine such questions according to their own law *Page 299 
then transfers of property become complicated and restricted in effect. A title, valid here, may be lost when the property is removed to another jurisdiction. Such a situation would obviously be intolerable. Therefore the rule has become engrafted in the law of every jurisdiction that in some circumstances its courts must determine questions submitted to them by the rules of law applied in some other jurisdiction. To that extent foreign law is applied but as part of our own law. (See articles by Professor Beale, 23 Harvard Law Review, 260, and 45 Harvard Law Review, 969.) Though public policy and comity may be decisive in the determination of what law shall be applied in given circumstances `it does not belong to the judges to recognize or to deny the rights which individuals may claim under it, at their pleasure or caprice; but, it having obtained the force of law by user and acquiescence, it belongs only to the political government of the State to change it whenever a change becomes desirable.' (Parsons v. Lyman, 20 N.Y. 103, 112.) * * *
"The courts of the various jurisdictions have with substantial unanimity adopted certain rules. `Capacity to make a valid conveyance of a chattel is determined by the law of the State where the chattel is situated at the time of conveyance.' (American Law Institute, Tentative Restatement, Conflict of Laws, § 275.) `The essential validity of a conveyance of a chattel is determined by the law of the State where the chattel is situated at the time of the conveyance.' (Section 277.) In this State these rules have long been applied to the conveyance of tangible chattels. More recently, we have indicated that the rule should be applied to negotiable paper instruments. `Bills and notes were developed under the law merchant as convenient instrumentalities of trade and commerce. They pass from hand to hand by indorsement and delivery and properly are governed by the rule relating to the transfer of *Page 300 
tangibles. The rule of international law, that the validity of a transfer of movable chattels must be governed by the law of the country in which the transfer takes place, applies to the transfer of checks or bills of exchange by indorsement.' (Weissman v. Banque de Bruxelles, 254 N.Y. 488, 494
[173 N.E. 835] opinion by Pound, J.)
"For the same reasons the rule should be and generally is applied to other intangible personal property, at least when `no one can get the benefits of ownership except through and by means of the paper' which evidences such intangible property. (Direction Der Disconto-Gesellschaft v. United States SteelCo., 267 U.S. 22, 28 [45 Sup. Ct. 207, 69 L.Ed. 495].) Intangible property, like shares of corporate stock or debts, may for practical purposes be merged and embodied in documents like stock certificates or bonds, which like bills and notes are `instrumentalities of trade and commerce.' `They pass from hand to hand and properly are governed by the rule relating to the transfer of tangibles.' (Cf. American Law Institute, Tentative Restatement, Conflict of Laws, §§ 53, 57, 281, 282.) Such documents and the personal property merged or embodied in them have, like tangible chattels, a situs apart from the domicile of the owners. Under the Constitution of the United States, such situs may be insufficient to empower the State, where such documents are situated, to impose a property tax on them, though the owner resides in a sister State of the Union. (Farmers Loan Trust Co. v. Minnesota, 280 U.S. 204 [50 Sup. Ct. 98,74 L.Ed. 371, 65 A.L.R. 1000]; First National Bank of Boston v.Maine, 284 U.S. 312 [52 Sup. Ct. 174, 76 L.Ed. 313, 77 A.L.R. 1401].)
"Nevertheless the physical presence of such documents gives the State jurisdiction over them in other respects (Burnet v.Brooks, 288 U.S. 378 [53 Sup. Ct. 457, 77 L.Ed. 844, 86 A.L.R. 747].) Judicial decisions affecting the situs of choses in action *Page 301 
or intangible property not embodied or merged in a mercantile document are not in point. (Cf. Matter of Anziani, (1930) 1 Ch. 407, and Republica de Guatemala v. Nunez (Court of Appeal, 1927) 1 K.B. 669.) We are dealing with a conveyance in trust of documents which in the market place are treated as property and not merely evidence of property (Cf. Pierpoint v. Hoyt,260 N.Y. 26 [182 N.E. 235, 83 A.L.R. 1195]), and consider no other question."
It should be noted that all of the assets involved in the case at bar are within the intangible personal property class, see Inre Dodge Brothers, 241 Mich. 665; and that the generally accepted rule, the situs of intangible assets is the domicile of the owner unless fixed by some positive law, applies to the descent and distribution of personal property.
The term escheat is distinct from succession to heirs and next of kin. In Braun v. McPherson, 277 Mich. 396, we defined the term in the following language:
"`The term has come to signify a falling of a decedent's estate into the general property of the State on his death intestate and without lawful heirs, and is applied indifferently to all kinds of property of whatever nature.' 21 C.J. p. 848."
In Wilder v. Charleston Transit Co., 120 W. Va. 319
(197 S.E. 814, 117 A.L.R. 948), the court said:
"In considering the statutory provisions as to escheat, we have kept in mind that the words `distribution' and `escheat' have well settled technical meanings in law. `Distribution means the division of the residuary estate of a deceased person among his next of kin within the limits allowed by statute.' 10 Halsbury's Laws of England (2d Ed.), § 821. Accord: Thomson v. Tracy,60 N.Y. 174, 180, 181. The word `escheat' signifies `a falling of decedent's estate into the general property of the State on his *Page 302 
death, intestate and without lawful heirs.' Braun v.McPherson, 277 Mich. 396. The word denotes `an obstruction of the course of descent.' Blackstone, Book 2, p. 244. Accord: Inre Maltbie, 102 Misc. 575 (169 N.Y. Supp. 339). Escheat is not technically a part of distribution and in fact has no application to property until distribution becomes impossible."
See, also, In re Estate of Miner, 143 Cal. 194, (76 P. 968).
The distinction has been recognized by the English courts. SeeIn re Barnett's Trusts, (1902) 1 Ch. 847.
The decision in Re Lyons' Estate, supra relied upon by appellant is criticized in 2 Beale, Conflict of Laws, p. 1039, § 309.1, in the following language:
"The escheat of chattels, or more accurately the seizure of the chattels to the State as bona vacantia, is not a matter of succession on death. It is rather a right to confiscate property to which there is no other claimant. The State of situs refers this to the law of no other State; it seizes its own. (In reBarnett's Trusts, (1902) 1 Ch. 847, Harvey v. Richards, 1 Mason, 381, Fed. Cas. No. 6184 (1818; semble). A more difficult question arises when the movables left vacant are intangible, like a bank deposit in one State of a person domiciled in another. It has been held in such a case that after the deposit has been collected by an ancillary administrator it should not go to the State where the deposit was, on the ground that intangibles have a situs at the domicile of the owner. (In reLyons' Estate, 175 Wn. 115 [26 P.2d 615]) (1933). A different result might, it seems, be reached. As applied to this case, the result might almost be said to be based upon a fiction. The picture of a bona vacantia is that of movables without an owner being taken by the officers of the State. In reality, the money which represented by the bank deposit was where the bank was when it was proved to be without an owner." *Page 303 
In 11 Am. Jur. p. 371, it is said:
"Inasmuch as when a person dies intestate without heirs and the property goes by escheat, the right claimed is not in the nature of a succession, the maxim `mobilia sequuntur personam' does not apply, and the country in which the property is located is entitled to the funds rather than the country in which decedent was domiciled and of which he was a citizen."
The question involved in this case is one of first impression in this State, but it would seem from the authorities cited that the rule of situs of intangible assets is the domicile of the owner, while applying to distribution of personal estate, does not necessarily apply to escheated personal property.
The Michigan escheat law is a part of the law of intestate succession. Chapter 2, § 50, of the probate code (Act No. 288, Pub. Acts 1939, [Comp. Laws Supp. 1940, § 16289-2 (50), Stat. Ann. 1943 Rev. § 27.3178 (120)]), provides that:
"When any person shall die intestate * * * if such deceased person, at the time of his death, resided in any other State or country, leaving estate to be administered in this State, administration thereof shall be granted by the probate court of any county in which there shall be estate to be administered."
Sections 13456, 13457, 3 Comp. Laws 1929 (Stat. Ann. §§ 26.1022, 26.1023), designate the duty of the attorney general and 3 Comp. Laws 1929, § 13469 (Stat. Ann. § 26.1043), provides:
"The attorney general shall see that all the property of whatever name or nature remaining in such estate after due administration thereon is turned over to the care and custody of the State board of escheats and to their successors in office, who shall take the same as trustee thereof." *Page 304 
It should be noted that when the escheat law was enacted the doctrine of situs of domicile was in existence in Michigan. We presume that it was the intention of the legislature by the enactment of the escheat law to overrule the doctrine of situs of domicile insofar as escheated estates are concerned. In our opinion the assets involved in the case at bar escheat to the State of Michigan under and by virtue of the Michigan escheat law.
The judgment of the circuit court is affirmed. A public question being involved, no costs will be allowed.
CARR, C.J., and BUSHNELL, BOYLES, REID, and NORTH, JJ., concurred with SHARPE, J. BUTZEL, J., concurred in the result.
DETHMERS, J., did not sit.