S. Samuel Di Falco, S.
Etelka Utassi died on May 13, 1944 intestate without known distributees, a citizen of the United States domiciled in Lucerne, Switzerland, leaving property in the form of a securities account which she had maintained in this county. The City of Lucerne was appointed as the administrator of her estate in the absence of known heirs in accordance with the Swiss statute of distribution (Swiss Civ. Code, art. 457, 466). Upon the application of the domiciliary fiduciary an ancillary administrator was appointed by this court to administer the New York assets for which he is presently accounting.
*388 The question at issue lias been raised in tile answer filed by the Attorney-General of the State of New York who asserts title to the property on behalf of the People under the Abandoned Property Law and upon the authority of Matter of Menschefrend (283 App. Div. 463, affd. 8 N Y 2d 1093). The accounting ancillary administrator takes the position on the other hand that the fund is the property of the domiciliary fiduciary, namely the City of Lucerne, represented by its Estate Office, by virtue of the provisions of the Swiss code, which it is said constitutes the municipality of which the intestate died a resident as her heir in the absence of known next of kin. Additional authority for the proposition that the property should be transmitted to the domicile is to be found, according to the petitioner, in the treaty between Switzerland and the United States, but the court will not reach this argument because it believes his initial position to be sound.
In Matter of Menschefrend (supra) the decedent had died intestate and without known distributees, a resident of California. The Public Administrator of Los Angeles County was appointed to administer his estate and later applied for ancillary letters of administration in this court because of the presence of assets in this jurisdiction. Upon the accounting by the ancillary administrator the Attorney-General of the State of New York laid claim to the distributable balance of the New York property upon the ground that it escheated to the State of New York under the provisions of the Abandoned Property Law. The court held that the law that succession follows domicile applies only where there is succession — i.e. inheritance — and that in its absence the doctrine of bona vacantia confers upon the State where moveables are found the right of confiscation by escheat. In reaching this decision the court cited with approval Matter of Barnett ([1902], 1 Ch. 847) where the court ‘ ‘ pointed out that a foreign administrator, coming into the place where the property of the escheat is located, does not represent the deceased or claim the property through him ’ ’. (Matter of Menschefrend, supra, p. 469.) The decision in the Supreme Court of Michigan in Matter of Rapoport (317 Mich. 291) was also cited by the Appellate Division in its opinion reversing the Surrogate and holding that the property accounted for was the property of the People of the State of New York.
In the Menschefrend case it was not possible for the Public Administrator of Los Angeles County to assert his status as the statutory heir of his intestate. That is the feature of the present case which makes the Menschefrend holding inapplicable for it *389 was established beyond reasonable dispute by the testimony of the expert and the citation of Swiss authority that article 466 of the Swiss Civil Code clearly establishes the place of the decedent’s last domicile to be her heir in the absence of persons lawfully entitled to inherit.
11 Art. 466
“ D. Public Body.
“If the decedent does not leave persons entitled to inherit, the inheritance falls, subject to the usufruct of the great-grandparents and the brothers and sisters of the grandparents, to the canton where the decedent had the last domicile, or to the municipality designated as entitled by the legislation of said canton. ’ ’
The concept of a municipality or other governmental body as an heir is not too difficult to comprehend when one remembers that such a political entity is clearly entitled to take by will (United States v. Burnison, 339 U. S. 87). This possibility was adverted to in the decision of the Court of Appeals in Matter of Turton (8 N Y 2d 311) and discussed at length in Matter of Maldonado [1954] (2 Week L. R. 64 [1953], 2 All Eng. Rep. 1579 — C A). In that case the English court held that where a Spanish domiciliary died leaving no heirs or distributees who took by way of relationship to the decedent, the Spanish government was entitled to her personalty located in England because of the Spanish law which provided that the State took as an heir and not under any theory of escheat or bona vacantia. The court (Eveeshed, M. R.) said (p. 71): “ If by the law of Spain it is possible to limit or define the individuals who can claim to be successors, namely, individuals having some connexion by blood or marriage with the deceased, I can see no reason why, in default of there being such an individual, the law of Spain should not nominate or constitute as heir any person or corporation, including the state itself. The idea of succession doubtless imports some notion of continuity, for example, continuity of title; but I see no reason why this conception should be inapplicable to the state which is constituted successor by its own laws. It is conceded that if under a valid will property of the deceased were given to the State of Spain, that state would be treated as being a successor, although in that case it would be a successor as the result of the testamentary disposition. Nor does the Latin word ‘ heres ’, from which the word £ inherit ’ is derived, necessarily involve any notion of some blood connexion.”
A like result was reached in the earlier case of Goods of Beggia [1822] (1 Addams Eccl. 340, 162 Eng. Reprint 119), in which *390 the court held that where the consul of the Emperor of Morocco had died intestate in Gibraltar without heirs or next of kin the Emperor’s representative would be appointed administrator of his estate, the court recognizing and applying the Mohammedan law under which the Emperor was entitled to the property.
For the reasons stated the objections of the Attorney-General of the State of New York on behalf of the People of the State of New York are overruled and the ancillary administrator is directed to transmit the fund under the decree settling his account to the domiciliary administrator, the Estate Office of the City of Lucerne, Switzerland. Counsel fees have been fixed in the amount charged and the objections of the Attorney-General in this regard are overruled.