## STANDARD OIL CO. *v.* NEW JERSEY.

No. 384.   Argued March 5, 1951.—Decided May 28, 1951.

*Josiah Stryker* argued the cause and filed a brief for appellant.

*Emerson Richards,* Deputy Attorney General of New Jersey, argued the cause for appellee. With him on the brief was *Theodore D. Parsons,* Attorney General.

MR. JUSTICE REED delivered the opinion of the Court.

The Standard Oil Company, a New Jersey corporation, appeals from a judgment of the Supreme Court of New Jersey insofar as it declares escheated to the State of New Jersey unpaid dividends declared upon the stock of Standard Oil, and twelve shares of the common stock of the Company.

The New Jersey Escheat Act reads in part:

"If any person, who, at the time of his death, has been or shall have been, the owner of any personal property within this State, and shall have died, or shall die, intestate, without heirs or known kindred, capable of inheriting the same, and without leaving a surviving spouse, such personal property, of whatsoever nature the same may be, shall escheat to the State."

"Whenever the owner, beneficial owner, or person entitled to any personal property within this State, has been or shall be and remain unknown for the period of fourteen successive years, or whenever the whereabouts of such owner, beneficial owner or person, has been or shall be and remain unknown for the period of fourteen successive years, or whenever any personal property wherever situate has been or shall be and remain unclaimed for the period of fourteen successive years, then, in any such event, such personal property shall escheat to the State." N. J. Rev. Stat. (Cum. Supp. 1945–1947) 2:53–16, 2:53–17.

In accordance with the procedure prescribed by the Act, a petition in the name of the State of New Jersey for a decree escheating certain personal property,[1] including the property in issue here, was filed in the Chancery Division of the Superior Court of New Jersey. The petition alleged that appellant had in its custody or possession property which was subject to escheat under the Act

---

[1] The Escheat Act defines the term "personal property" to include "moneys, negotiable instruments, choses in action, interest, debts or demands due to the escheated estate, stocks, bonds, deposits, machinery, farm crops, live stock, fixtures, and every other kind of tangible or intangible property and the accretions thereon." N. J. Rev. Stat. (Cum. Supp. 1945–1947) 2:53–15.

for each of the alternative reasons listed in the above provisions: the owners of the property had died intestate without leaving anyone capable of taking the property; the owners had been unknown for fourteen successive years; the whereabouts of the owners had been unknown for fourteen successive years; the property had been unclaimed for fourteen successive years.

The appellant answered the petition and, after notice and hearing, the Chancery Division of the Superior Court entered a final judgment ordering escheat of the personal property. 2 N. J. Super. 442, 64 A. 2d 386; 5 N. J. Super. 460, 68 A. 2d 499. This judgment was modified and affirmed as modified by the Supreme Court of New Jersey. 5 N. J. 281, 74 A. 2d 565.

Standard Oil, appealing from the decision of the Supreme Court of New Jersey, claims that the New Jersey Escheat Act and the judgment thereunder deprived the Company of its property without due process of law in violation of the Fourteenth Amendment. This unconstitutional deprivation is alleged to arise from the fact that the judgment of escheat does not protect Standard Oil from later liability to the stockholders whose claims to stock and dividends are escheated, because: (1) both the notice to the claimants of the property prescribed by the statute and the notice actually published were so inadequate that claimants were afforded no reasonable opportunity to learn of the escheat proceeding and of its effect on their claims, or to appear and protect their rights; (2) the obligation of the contracts of the persons whose property was escheated was impaired by the statute and judgment thereunder in violation of Art. I, § 10, ¶ 1 of the Constitution of the United States; (3) the New Jersey courts were without jurisdiction to enter the judgment since neither the shares of stock nor the divi-

dends had a situs in New Jersey for the purpose of escheat, nor were either lawfully seized in the escheat proceedings.[2]

*Notice.*—Appellant contends that the judgment of escheat deprives the various claimants against Standard Oil of their property without adequate notice, and since the claimants may therefore sue appellant later and recover on these claims, this statute and judgment deprive appellant of its property without due process of law.[3]

---

[2] In addition to the shares of common stock and the dividends, the personal property in possession of appellant, which the Chancery Division of the Superior Court held to be escheated, included unpaid wages of former employees, money withheld from wages of former employees for purchase of Liberty Bonds, moneys representing the amounts of unpresented commercial checks issued by appellant, and moneys representing unpresented coupons on a debenture issue. But the Supreme Court of New Jersey held that the Escheat Act did not apply to debts or demands due the escheated estate that had been "extinguished, either by satisfaction or by the bar of the statute of limitations." *State* v. *Standard Oil Co.*, 5 N. J. 281, 293, 74 A. 2d 565, 570. Moneys representing unpaid wages and unpresented checks and coupons were affected by this ruling. The New Jersey rule is that the statute of limitation bars the right as well as the remedy. *Id.* at 292 *et seq.*, 74 A. 2d at 570 *et seq.* Cf. *Chase Securities Corp.* v. *Donaldson*, 325 U. S. 304, 311, considering *Campbell* v. *Holt*, 115 U. S. 620. The New Jersey Supreme Court also held that minor claims that were not listed in the notice of the Chancery Division's proceedings were not escheated. 5 N. J. 281, 310, 74 A. 2d 565, 579. Consequently, appellant complains only of the escheat of twelve shares of common stock of an aggregate par value of $300, and of unpaid dividends.

Of course, New Jersey's construction of the escheat statutes is binding on this Court except where matters of federal law are involved. *Hebert* v. *Louisiana*, 272 U. S. 312, 317; *United States* v. *Burnison*, 339 U. S. 87, 89.

[3] The escheat statute makes the decree a full release of liability in any jurisdiction in which it is effective but New Jersey makes no guarantee to protect appellant against such claims. N. J. Rev. Stat. (Cum. Supp. 1945–1947) 2:53–23.1.

The statute, N. J. Rev. Stat. (Cum. Supp. 1945–1947) 2:53–21, provides:

"A notice containing a summary of the order designating the time and place of hearing, as approved by the court shall be published in a manner directed by the court and shall also be published once a week for three successive weeks in a newspaper of general circulation designated by the court; . . . ."

The Supreme Court of New Jersey authoritatively construed this to require "that the notice shall identify the property of which escheat is sought and the last known owner." 5 N. J. at 307, 74 A. 2d at 577.[4] The published notice in this case corresponded with this construction. It described the property in accordance with the state court's understanding of the requirements of N. J. Rev. Stat. 2:53–21, and clearly indicated that the petition was one for escheat.

This case differs from *Wuchter* v. *Pizzutti*, 276 U. S. 13, relied on by appellant, since it is not here attempted to validate a defective statutory provision for notice by recourse to the sufficiency of the notice which, although not required by statute, was in fact given. Here it is the statute itself, as interpreted by the state court, which requires what we think is adequate notice.

In *Security Savings Bank* v. *California*, 263 U. S. 282, a case involving statutory escheat of the bank deposits presumed abandoned, where nothing to the contrary is known by bank officials, because unused and unclaimed

---

[4] The New Jersey Supreme Court did not specifically require that the address of the last known owner be included in the notice, but the notice which it approved did, in fact, contain the last known addresses, and also described the value and character of the property which was to be escheated. The notice was published once a week for three successive weeks, in accordance with the statutory requirement. N. J. Rev. Stat. (Cum. Supp. 1945–1947) 2:53–21.

for twenty years, it was similarly contended the bank was denied due process because depositors would not be bound by the judgment of escheat. P. 286. This Court said: "[T]he essentials of jurisdiction over the deposits are that there be seizure of the *res* at the commencement of the suit; and reasonable notice and opportunity to be heard." P. 287. The procedural provision made the depositors affected parties and required publication in Sacramento County, only, of the summons with no requirement of the depositors' addresses. Delivery of a copy of the summons on the bank was commanded. It was held, p. 287, that the personal service on the bank effected seizure of the deposit and the publication of the summons was effective as similar publication would be in litigation involving unknown persons with possible claims to property. Cf. *Anderson National Bank* v. *Luckett,* 321 U. S. 233, 243.

In *Mullane* v. *Central Hanover Trust Co.,* 339 U. S. 306, in a proceeding to settle trusts with numerous parties as possible beneficiaries whose names and interests were unknown to the trustee, we commented on the subject of notice:

"This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning." P. 317.

We held that:

"Accordingly we overrule appellant's constitutional objections to published notice insofar as they are urged on behalf of any beneficiaries whose interests or addresses are unknown to the trustee." P. 318.

The sound reasons stated in the foregoing cases for deeming the notices there given adequate to bind interested persons in the respective proceedings, lead us to the conclusion that the notice by publication in this case was

adequate. If the state has the responsibility of looking after abandoned property subject to its sovereign power, these publications are adequate to affect the owner's rights.

*Impairment of Contract.*—Appellant attacks the validity of the New Jersey escheat statute on the ground that it impairs the contract rights of the owners of the dividends and stock certificates in violation of Art. I, § 10, ¶ 1, of the Constitution: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." This New Jersey law was enacted to authorize the state to take possession of "personal property" whenever the owner entitled to that "personal property within [New Jersey] . . . shall be and remain unknown" or his "whereabouts" remain unknown or the property remains "unclaimed" for fourteen successive years. N. J. Rev. Stat. (Cum. Supp. 1945–1947) 2:53–15 and 17. We need not consider whether a state possesses inherent power for such legislation as to personalty as the successor to a prerogative of royal sovereignty.[5]

As a broad principle of jurisprudence rather than as a result of the evolution of legal rules, it is clear that a

---

[5] The right of the King at common law to take possession, in certain circumstances, of abandoned chattels is clear. VII Holdsworth, History of English Law (2d ed.), 495. *E. g.*, treasure trove, *Attorney-General* v. *Trustees of the British Museum*, [1903] 2 Ch. 598. This doctrine of *bona vacantia* came to include choses in action, X Holdsworth, *supra*, 350, such as certificates of stock in corporations, VII Holdsworth, *supra*, 515 *et seq.;* Ames, Disseisin of Chattels, 3 Select Essays in Anglo-American Legal History 541, 558. Thus the King possessed as *bona vacantia* the right to dividends on a claim of a dissolved corporation in a bankruptcy proceeding against the corporation's debtor. This was held in 1898 on the theory that the corporation was "extinct without successor or representative." *In re Higginson & Dean*, [1899] 1 Q. B. 325, 330. See Grant on Corporations (1854 ed.) 303–304. Wright, J., said, [1899] 1 Q. B. 329: "The Courts will not allow a person who has obtained title or possession as a

436

state, subject to constitutional limitations, may use its legislative power to dispose of property within its reach, belonging to unknown persons.[6] Such property thus escapes seizure by would-be possessors and is used for the general good rather than for the chance enrichment of particular individuals or organizations. Normally the obligor or holder and the obligee or owner of abandoned property would, as here, have no contractual arrangement between themselves for its disposition in case of the owner's failure to make claim. As the disposition of abandoned property is a function of the state, no implied contract arises between obligor and obligee to determine the disposition of such property. Consequently, there is no impairment of contract by New Jersey's statute, enacted subsequent to the creation of the obligations here under examination, but only the exercise of a regulatory power over abandoned property.[7]

mere trustee of chattels to set up unconscientiously any beneficial title by occupancy, possession, or otherwise." Thus the Crown took the place of the extinct creditor. Cf. Enever, Bona Vacantia Under the Law of England (1927), 55.

See particularly, *In re Melrose Ave.,* 234 N. Y. 48, 53, 136 N. E. 235, 237.

*Cunnack* v. *Edwards,* [1896] 2 Ch. 679, dealt with a society treated as a legal unit. The members had associated themselves to provide annuities for their widows. After the death of all the associates and their widows, £1250 surplus remained. As it was not a charity but rather a business arrangement under which all obligees had received payment in full, the court held that neither the *cy-pres* doctrine nor the doctrine of the resulting trust applied, and as Lord Halsbury put it: "The only other alternative remaining is that which I adopt, namely, that these funds are bona vacantia, and belong to the Crown in that character."

[6] *Cunnius* v. *Reading School District,* 198 U. S. 458, 469. Compare *Mormon Church* v. *United States,* 136 U. S. 1, 47. See 3 Scott, Law of Trusts (1939), § 411.4.

[7] *Security Savings Bank* v. *California,* 263 U. S. 282, 285; *Connecticut Ins. Co.* v. *Moore,* 333 U. S. 541, 545–548; *Provident Savings Institution* v. *Malone,* 221 U. S. 660, 663, 665–666.

*Situs of Property.*—Appellant argues that the escheat to New Jersey of the stock and the dividends denies it due process because such property has no situs in New Jersey for the purpose of escheat.[8]  Appellant also contends that it has neither custody nor possession of these debts or demands due from it to its stockholders and therefore they cannot be seized.  Since the property cannot be seized or escheated, the corporation would remain liable to its stockholders, and to require the payment to the state denies due process.

Appellant has no tangible property in New Jersey except its stock and transfer books, kept at its registered office, located in the office of an individual, at Flemington, New Jersey.  Appellant points out that in the *Security Savings Bank* case, 263 U. S. at 285, and the *Anderson National Bank* case, 321 U. S. at 241, the contracts of deposit were made in the respective states by banks doing business therein.  A like situation does not exist here, as the stock was issued and the dividends were held in other states.  Further it is said that the bank deposit cases did not deal with escheat statutes, but rather, like the *Moore* case, with conservation statutes.

It was not solely the fact that the contracts for bank deposits were made in California and Kentucky that gave those states power over the abandoned deposits. Had the contract been one of bailment between two individual citizens of those states who had subsequently removed to another state, the courts of the state of the

---

[8] Each classified list of debts or demands due to the escheated estates by the appellant company includes as the last known addresses of the holders of said claims chiefly points outside New Jersey.  The methods of payment of the different claims have varied.  For example, dividends have been paid from bank accounts maintained in New York banks by appellant either in its own name or that of its transfer agent.  As we think these business practices are not significant in determining appellant's liability for these escheats, they will not be further discussed.

contract would not have controlled, though its laws might have. The controlling fact was that the banks and the depositors could be served with process, either personally or by publication, to determine rights in this chose in action.[9]

Appellant is a corporation of New Jersey, amenable to process through its designated agent at its registered office. N. J. Rev. Stat. (Cum. Supp. 1945–1947) 14:4–1, 14:4–2. Cf. *State* v. *Garford Trucking, Inc.,* 4 N. J. 346, 72 A. 2d 851. This gave New Jersey power to seize the *res* here involved, to wit, the "debts or demands due to the escheated estate." And the fact that this is immediate escheat is not significant. Escheat is permitted against persons whose addresses or existence is unknown.[10] The taking-over in the bank deposit cases foreshadowed escheat. See the *Malone* case, 221 U. S. at 664, the

---

[9] This is like the creditor's ability to garnishee the debtor of his debtor, wherever the garnisheed debtor may be. *Harris* v. *Balk,* 198 U. S. 215; *Louisville & Nashville R. Co.* v. *Deer,* 200 U. S. 176; *Baltimore & Ohio R. Co.* v. *Hostetter,* 240 U. S. 620. Cf. Carpenter, 31 Harv. L. Rev. 905, but see Beale, 27 Harv. L. Rev. 107. Whatever may be Professor Beale's view of garnishment, he agrees with the theory of control relied upon herein.

"The true doctrine would seem to be that a debt has in fact no situs anywhere; not merely because it is intangible but because as a mere forced relation between the parties it has no real existence anywhere. Like other such relations it may, of course, be controlled by the law, and by the courts as instruments of the law; but the control must be obtained by making use of the relation. In order to control the relation the court must have the power to control both parties to it. Any court which has both debtor and creditor may compel a release from the creditor and an assignment of the action of the creditor. In other words if a debt is to be legally assigned or discharged it requires the action of both parties and especially the creditor, and the court which has to apply such a process must do so through its control over both parties." 27 Harv. L. Rev. at 115–116.

[10] *Christianson* v. *King County,* 239 U. S. 356, 368; *Hamilton* v. *Brown,* 161 U. S. 256, 268.

*Security Savings Bank* case, 263 U. S. at 283 and 290, the *Anderson National Bank* case, 321 U. S. at 241.

No matter where the appellant's assets may be, since it is its obligation to pay to the escheated estate that is taken, personal service on appellant effects a seizure of that obligation in just the same way that service on a bank is seizure of the deposit as shown in the *Notice* subdivision of this opinion, *supra,* p. 432. That power to seize the debt by jurisdiction over the debtor provides not only the basis for notice to the absent owner but also for taking over the debt from the debtor. *Security Savings Bank* v. *California, supra,* at 287. It is true that fiction plays a part in the jurisprudential concept of control over intangibles. There is no fiction, however, in the fact that choses in action, stock certificates and dividends held by the corporation, are property. Whether such property has its situs with the obligor or the obligee or for some purposes with both has given rise to diverse views in this Court.[11]

We see no reason to doubt that, where the debtor and creditor are within the jurisdiction of a court, that court has constitutional power to deal with the debt. Since choses in action have no spatial or tangible existence, control over them can "only arise from control or power over the persons whose relationships are the source of the rights and obligations." *Estin* v. *Estin,* 334 U. S. 541, 548.[12] Situs of an intangible is fictional but control over

[11] *Blackstone* v. *Miller,* 188 U. S. 189, overruled by *Farmers Loan & Trust Co.* v. *Minnesota,* 280 U. S. 204, 209. The latter case led to a like decision in *First National Bank* v. *Maine,* 284 U. S. 312, which was in turn overruled by *State Tax Comm'n* v. *Aldrich,* 316 U. S. 174, 181. See *Treichler* v. *Wisconsin,* 338 U. S. 251, 256.

[12] *Curry* v. *McCanless,* 307 U. S. 357, 365–366: "Such rights are but relationships between persons, natural or corporate, which the law recognizes by attaching to them certain sanctions enforceable in courts. The power of government over them and the protection which it gives them cannot be exerted through control of a physical

parties whose judicially coerced action can make effective rights created by the chose in action enables the court with such control to dispose of the rights of the parties to the intangible.[13]   Since such power exists through the state's jurisdiction of the parties whose dealings have created the chose in action, we need not rely on the concept that the asset represented by the certificate or dividend is where the obligor is found.[14]   The rights of the owners of the stock and dividends come within the reach of the court by the notice, *i. e.*, service by publication; the rights of the appellant by personal service.   That power enables the escheating state to compel the issue of the certificates or payment of the dividends.   Compare *Great Northern R.*

---

thing.   They can be made effective only through control over and protection afforded to those persons whose relationships are the origin of the rights."

See a like ruling in *Direction der Disconto-Gesellschaft* v. *United States Steel Corp.*, 300 F. 741, 746, and 267 U. S. 22, 28.

[13] When taxation of intangibles was ruled by *Farmers Loan & Trust Co.* v. *Minnesota*, 280 U. S. 204, to the effect that states could not tax intangibles belonging to nonresidents though owed by residents, Washington held that a Washington bank deposit, belonging to the estate of a known nonresident decedent without heirs, could not escheat to Washington.   "[T]he situs of this property was at the domicile of its owner, and therefore it was not property within this state at the time of his death and not subject to escheat under our statute."   *In re Lyons' Estate*, 175 Wash. 115, 123, 26 P. 2d 615, 618. A contrary view was taken in *In re Rapoport's Estate*, 317 Mich. 291, 26 N. W. 2d 777.   There it was held that the Michigan bank deposit of a nonresident decedent without heirs passed to Michigan on the theory that the Michigan escheat statute overruled the Michigan doctrine of the domiciliary situs of intangibles.

[14] 2 Beale, Conflict of Laws, § 309.1: "The picture of *bona vacantia* is that of movables without an owner being taken by the officers of the state.   In reality, the money which [is] represented by the bank deposit was where the bank was when it was proved to be without an owner."   An obligor on a chose in action, a bank especially, does not always have tangible assets to represent the liability.

*Co.* v. *Sutherland,* 273 U. S. 182, 193.[15]  This gives New Jersey jurisdiction to act.  That action, of course, must be in accord with the boundaries on legislation set by the Constitution.

Unclaimed property at the disposal of the state may include deposits in banks doing business in the particular state, though incorporated by the Federal Government, 12 U. S. C. § 21 *et seq.  Anderson National Bank* v. *Luckett,* 321 U. S. 233.  Such a deposit "is a part of the mass of property within the state whose transfer and devolution is subject to [the same] state control," p. 248, as would be "tangible property."  *Security Savings Bank* v. *California, supra,* p. 285.  Moneys owed by foreign insurance companies, doing business in a state, on life policies issued on the lives of residents of that state and remaining unclaimed for an adequate period, are subject to the state's disposition.  *Connecticut Ins. Co.* v. *Moore,* 333 U. S. 541.

---

[15] The fact that New Jersey has adopted the Uniform Stock Transfer Act with its provisions for the transfer of shares and the replacement of lost certificates is, we think, without a bearing on the problem of power to escheat. N. J. Rev. Stat. (Cum. Supp. 1945–1947) 14:8–27 and 14:8–43. While those sections provide for transfer of stock certificates only by delivery and the issue of new certificates only after notice by publication or otherwise and upon security, they were apparently treated by New Jersey as inapplicable to the problem of escheat. See *State* v. *Standard Oil Co.,* 5 N. J. 281, 307, 74 A. 2d 565, 577. New Jersey may consider that escheat is a proceeding of the same general character as matters of internal corporate management reserved in its decision in *Elgart* v. *Mintz,* 123 N. J. Eq. 404, 414–415, 197 A. 747, 753, an attachment case. The purpose of the Uniform Stock Transfer Act was to provide a system for transfer of stock that states might follow to simplify transactions that touched other states. See for example the complications over attachments in *Mills* v. *Jacobs,* 333 Pa. 231, 4 A. 2d 152. As the Uniform Stock Transfer Act was not specifically directed at shares with unknown owners, New Jersey may treat such shares in its corporations differently from lost shares.

We think that stock certificates and undelivered dividends thereon may also be abandoned property subject to the disposition of the domiciliary state of the corporation when the whereabouts of the owners are unknown for such lengths of time, and under such circumstances, as permit the declaration of abandonment.[16]   That rule is applicable here.

*Full Faith and Credit.*—Finally, we shall deal with appellant's objection that this statutory escheat takes its property without due process because it does not protect it from claims by the owners.   The argument is that the protection afforded by the New Jersey escheat statute is inadequate in that N. J. Rev. Stat. (Cum. Supp. 1945–1947) 2:53–23.1[17] is no protection beyond the state against owners of the escheated shares or against escheat or conservation actions by other states against Standard Oil of New Jersey for the same debts or demands due from Standard to its stockholders.[18]   The judgment, as modified, calls for the reissue of the abandoned certificates to New Jersey and for the payment to that state of the unpaid dividends.

---

[16] Cf. VII Holdsworth, History of English Law (2d ed.), 515.

[17] 2:53–23.1: "Operation and effect in decree—

"Any decree entered pursuant to the act to which this act is a supplement, shall automatically operate as a full, absolute and unconditional release and discharge of the person having such property in possession or custody from any and all claim, demand, or liability to any person whatever other than the State Treasurer with respect to such property, and such decree may be pleaded as an absolute bar to any action brought against such person with respect to such property by any person other than the State Treasurer."

[18] We lay aside without consideration the possibility that the escheated certificates had legally been transferred to other parties by the owners prior to publication in this action.   ". . . I think that the risk . . . is not serious enough to justify a refusal to adjust the differences actually presented." *Direction der Disconto-Gesellschaft* v. *United States Steel Corp.*, 300 F. 741, 743; 267 U. S. 22, 29.

We have indicated above that we consider the notice to the stockholders adequate to support a valid judgment against their rights as well as those of the Company. The *res* is the debt and the same rule applies as with tangible property.[19] The debts or demands represented by the stock and dividends having been taken from the appellant company by a valid judgment of New Jersey, the same debts or demands against appellant cannot be taken by another state. The Full Faith and Credit Clause bars any such double escheat. Cf. *Baltimore & Ohio R. Co.* v. *Hostetter,* 240 U. S. 620, 624, and cases cited, particularly *Harris* v. *Balk,* 198 U. S. 215, 226.

Dissents suggest that states may enact only custodial statutes until this Court settles any controversy that may arise between states over rights to abandoned choses in action. The details of the method of bringing other states and foreign countries before this Court for selection of the appropriate sovereignty to receive the abandoned property are not elaborated upon. The claim of no other state to this property is before us and, of course, determination of any right of a claimant state against New Jersey for the property escheated by New Jersey must await presentation here.

The judgment of the Supreme Court of New Jersey is

*Affirmed.*

Mr. Justice Frankfurter, whom Mr. Justice Jackson joins, dissenting.

I do not understand that the Court affirms the judgment of escheat on the ground that New Jersey may condition the granting of a corporate charter on payment

---

[19] *Pennoyer* v. *Neff,* 95 U. S. 714; *Hamilton* v. *Brown,* 161 U. S. 256; *Pennington* v. *Fourth National Bank,* 243 U. S. 269. See n. 9, *supra.*

to the State of dividends unclaimed after 14 years. Indeed, the Court specifically bars the possibility of double escheat, which would logically result from such a holding. As I understand it, the decision must rest upon New Jersey's power over interests which in a territorial sense are assumed to be within its control. The foundation of this power is usually conveyed by the concept of situs. As to this ground of decision I must dissent. In *Connecticut Life Ins. Co. v. Moore,* 333 U. S. 541, this Court sustained a New York statute allowing escheat of the unclaimed proceeds of insurance policies on the basis of the insured's residence in the State at the time of the delivery of the policy. On that basis, the State where the last known owner was domiciled certainly has a better claim to abandoned stock than a State in which it happens that the corporation is subject to process.

If perchance one is to infer from the opinion that the unclaimed dividends deposited with the Guaranty Trust Company of New York are also escheatable by New York and that New York, had she anticipated New Jersey, could have exhausted all the potentialities of escheat in the unclaimed dividends, there is an added reason for dissent. The Constitution ought not to be placed in an unseemly light by suggesting that the constitutional rights of the several States depend on, and are terminated by, a race of diligence. The Bankruptcy Act expresses appropriate condemnation of such unseemly conduct and accidental solution of competing interests. It is one thing for a State to take custody of abandoned property as trustee, leaving open for subsequent determination what State has a controlling interest justifying escheat. But if a State wishes to assert its right to escheat property which by its very nature is not exclusively within its control, other interested States should be parties to the litigation. The right to resort to this Court for adjust-

ment of conflicting interests among several States has been placed in the Constitution to avoid crude remedies of self-help in the settlement of interstate controversies. See *Texas* v. *Florida,* 306 U. S. 398.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK concurs, dissenting.

There are several states with possible claims to the escheat of intangibles. The state of incorporation of the obligor; the state where the last known owner was domiciled (see *Connecticut Ins. Co.* v. *Moore,* 333 U. S. 541); the state where later on the true residence of the owner was proved to be; the state of his last known domicile; the state where the obligor has its main place of business; in case of insurance or trust property, the state of residence (or domicile) of the beneficiary. There may be still other states with claims of an equal or greater dignity to these. In this case we have heard from only one— the state of incorporation.

I think any of several states, including the state of incorporation, might constitutionally enact a custodial statute under which it undertook to hold the escheated intangibles pending determination by this Court of the claims of competing states. New Jersey has not done that. New Jersey undertakes to appropriate to her exclusive use (after a short statute of limitations has run) this vast amount of wealth. Hence, I dissent.