GILLESPIE v. FORT DODGE, D. M. & S. RY. CO. et al.

No. 14442.

United States Court of Appeals, Eighth Circuit.

March 30, 1953.

Rehearing Denied May 8, 1953.

James E. Cooney, Des Moines, Iowa (Robert J. Bannister and Paul Ahlers, Des Moines, Iowa, on the brief), for appellant.

Wendell B. Gibson, Des Moines, Iowa (Neill Garrett, Des Moines, Iowa, and Walter R. Dyer, Boone, Iowa, on the brief), for appellees.

Before SANBORN, WOODROUGH and COLLET, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal involves a "bar order" entered by the United States District Court for the Southern District of Iowa in a reorganization proceeding under Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205. Alexander J. Gillespie appealed from the denial of his application to exchange his five $1,000 First Mortgage Bearer Bonds of the Fort Dodge, Des Moines & Southern Railroad Company for securities and cash of the Fort Dodge, Des Moines & Southern Railway Company pursuant to a plan of reorganization adopted and approved by the District Court. The application to exchange was made after the cut-off date set out in the "bar order" and was denied for that reason. During the pendency of the appeal Alexander J. Gillespie died, and by order of this court Catherine Allen Gillespie, duly appointed executrix of the Estate of Alexander J. Gillespie, has been substituted as appellant.

Alexander J. Gillespie purchased the Bearer Bonds in question here on February 14, 1927. On February 18, 1930, the Fort Dodge, Des Moines & Southern Railroad Company was put into receivership in the State District Court of Boone County, Iowa, on petition of one of its creditors. The property of the Railroad Company was administered under supervision of that state court until November of 1939, when the receivership was removed and reorganization of the Railroad company was commenced under the provisions of the National Bankruptcy Law in the United States District Court.

In February of 1930, a Bondholders' Protective Committee (hereinafter called the first protective committee), was formed and, pursuant to a deposit agreement, Mr. Gillespie delivered his bonds to the Bankers Trust Company of New York in exchange for that company's certificate of deposit.

In February of 1938 the first Bondholders' Protective Committee was dissolved. Shortly thereafter a second Bondholders' Protective Committee was formed and the First National Bank of Philadelphia, Penn-

sylvania, was named depository for that committee. This second Protective Committee was the successor to the first Protective Committee. Gillespie testified he did not know of the dissolution of the first committee and the formation of the second and did not at any time between February 10, 1930 and July of 1949 do anything with respect to his bonds held by the depository Bankers Trust Company or the certificates of deposit representing those bonds. In the absence of directions from the owners of the bonds, the Bankers Trust Company retained possession of the bonds deposited with it even after the dissolution of the first Protective Committee. Since Gillespie did not direct disposition of his bonds, the Bankers Trust Company retained them.

After the reorganization proceedings were commenced in the federal court in November of 1939 they followed the ordinary course of such proceedings and the usual notices were given and orders entered. No question is raised in this appeal as to the correctness and propriety of the reorganization proceedings in general.

On June 16, 1943, the District Court ordered the Bankers Trust Company of New York to forward the First Mortgage Bonds of the Railroad Company to the Iowa-Des Moines National Bank & Trust Company of Des Moines. The Bankers Trust Company forwarded the bonds and, pursuant to the order, a certified list of the depositors of the bonds and their addresses. Gillespie's bonds were among those so forwarded, and his name and address were on the certified list of depositors of the bonds. Gillespie's address, as shown on the list, was 1175 Park Avenue, New York, N. Y., which had been his address at the time he deposited his bonds with the Bankers Trust Company in 1930. At the time of the trial in the case at bar, Gillespie's address was Stratford and Archer Roads, Rye, New York, and that had been his business and residence address since 1931, when he moved from 1175 Park Avenue, New York. Gillespie testified that at the time he changed addresses in 1931 he left a forwarding address of Stratford and Archer Roads, Rye, New York, and that mail had

been forwarded to his new address—the last time in 1946.

The chairman of the second Bondholders' Protective Committee, who had been a member of the first Protective Committee, testified that Gillespie's name had been on the list of bondholders since the time of the receivership in the state court, and that many notices of various natures were sent out to all listed bondholders during the course of the receivership and the reorganization. Gillespie testified he did not know of the receivership proceedings, the reorganization proceedings, or of any matters pertaining to his bonds or the Railway Company between February of 1930 and July of 1949.

The order of June 16, 1943, did not specifically order the Reorganization Committee to give notice by mail to holders of the certificates of deposit issued by the Bankers Trust Company of the time and place of exchange of the First Mortgage Bonds, but apparently pursuant to an order of the court of April 17, 1943, directing "that notice of the time and place of exchange of securities shall be given to the holders of the First Mortgage Five Per Cent Gold Bonds of the debtor company and of the certificates of deposit issued by the First National Bank of Philadelphia [the depository for the second Bondholders Protective Committee] by letter addressed to the last known owner of said bonds * * * at their last known address * * *", the Iowa-Des Moines Bank on August 5, 1943, sent the following registered letter to Gillespie at 1175 Park Avenue, New York, N. Y.:

"According to information furnished us by the Bankers Trust Company of New York, you are the holder of their Certificate of Deposit No. NY 1092 covering $5,000.00 Fort Dodge, Des Moines & Southern Railroad Company 5% First Mortgage Bonds due 12–1–32. These bonds may now be exchanged at this bank for new securities issued under the plan of reorganization of Fort Dodge, Des Moines & Southern Railroad Company. Letter of the Reorganization Committee dated April 21, 1943,

together with Letter of Transmittal is herewith enclosed for your use and attention.

"Under the plan of reorganization for each $1,000.00 of bonds you are entitled to receive new $400.00 registered income bond, 25 shares voting trust stock certificate, and a check for $32.00 representing interest on the new bond for the years 1941 and 1942.

"In addition to the above you are also entitled to dividends Nos. 1 and 2 on the old bonds in the amounts of $40.00 and $47.24 for each $1,000.00 bonds held.

"Upon receipt of the above certificate of deposit properly endorsed in blank with your signature guaranteed by either your local bank or a member of the New York Stock Exchange, together with letter of transmittal signed by the owner and giving the permanent mailing address, we will proceed with the issuance of the new securities to which you are entitled and collect the two dividends due you on the old bonds.

Yours very truly,
W. F. Howell,
WFH:hr    Assistant Trust Officer."

Under date of August 11, 1943, the Post-office Department notified the bank that the addressee Gillespie was "not at address given", and the letter was returned to the sender.

On May 2, 1944, after confirmation of a plan of reorganization, the District Court entered an "Order" approving the final report of the Reorganization Committee, discharging the Committee and providing, among other things, "That the exchange of the 'B' bonds and common stock of the reorganized company and interest payments for First Mortgage Five Per Cent Gold Bonds of the debtor company shall continue to be made by the reorganized company through its transfer agent, the Iowa-Des Moines National Bank & Trust Company, upon presentation of the First Mortgage Five Per Cent Gold Bonds of the debtor company, all as provided in the plan of reorganization, until the 1st day of May,

1949, after which date no further exchange shall be made and the right to demand and receive the said new securities and payment of interest in exchange therefor shall fully cease, be terminated and cutoff." This order of May 2, 1944, also provided for the giving of notice, which notice was published as follows: "Notice is hereby given that the District Court of the United States for the Southern District of Iowa has entered an order providing that after May 1, 1949, there shall be no further right in the holders of the First Mortgage Gold Bonds of said railroad company to demand or receive the exchange of securities and cash as provided in the Plan of Reorganization of said company, and after May 1, 1949, there shall be no further right in the holders of said gold bonds nor any other persons to demand or receive any portion of the free assets of said railroad company, nor interest payable on said bonds for the years 1939 and 1940, or any other period. Said bonds must be presented for exchange to the Iowa-Des Moines National Bank & Trust Company, as exchange agent, on or before May 1, 1949, and if not so presented all further rights in the holders of said bonds to receive either securities or cash to be exchanged therefor will cease and be finally terminated and cutoff."

This notice was published on May 12, 1944, in the New York Times and in the Des Moines Register on May 11, 1944. No further publication was ordered by the court or made by the Reorganization Committee. No provision was made for any personal notice by mail or otherwise in the order of the court.

In July of 1949, Gillespie brought his certificates of deposit to the National City Bank in New York for the purpose of selling his bonds. At that time, as he testified, he first became aware of his rights under the plan of reorganization to exchange his bonds. By that time the cut-off date for exchange of bonds—May 1, 1949—had passed, and the reorganized company and the Iowa-Des Moines National Bank refused to permit the exchange.

Gillespie then brought suit in the United States District Court, praying the court for an order authorizing and directing the Bank

and the Railway Company to exchange his bonds pursuant to the reorganization plan. The defendants resisted, and after hearing, the trial court denied the application to exchange. This appeal followed.

On the appeal, appellant urges two points: (1) That the order directing that the bonds be sent to the Iowa-Des Moines National Bank for exchange was complied with and that such compliance took place before the cut-off date; and (2) that the owner of the bonds has been deprived of his property without due process of law since he had received no notice of the setting of a cut-off date.

With regard to the first point, appellant contends that since the Bankers Trust Company of New York had forwarded Gillespie's bonds to the Iowa-Des Moines National Bank, Gillespie was in literal compliance with the court order of March 27, 1943, which provided: "g. That the reorganized company deliver to the owners of the 'First Mortgage 5% Gold Bonds' of the debtor company, upon the surrender thereof * * * the bonds, stock, and cash provided in the plan". Admittedly nothing in that order required, or referred to, the surrender of certificates of deposit. The court order of April 17, 1943, referred to certificates of deposit in the First National Bank of Philadelphia but not to certificates of deposit in the Bankers Trust Company of New York.

It is Gillespie's position that since his bonds were in the possession of the Des Moines bank, as they admittedly were, that he had "surrendered" them to the bank in conformity with court orders and that he therefore was entitled to exchange under the plan of reorganization. There is a certain appeal to appellant's contention under this point, but since in the view we take of the case, the cause must be reversed on the other ground, we declare no ruling on this point.

Appellant's second point seems to us to be well taken. At the time of decision in the trial court, the court did not have the benefit of the decision of the Supreme Court of the United States, in City of New York v. New York, New Haven & Hartford Railroad Company, 344 U.S. 293, 73 S.Ct. 299.

We withheld our ruling until that decision was handed down and the holding in that case appears to us to necessitate reversal of the judgment here.

In the New York, New Haven and Hartford case, "the railroad was required to mail copies of the order [the bar order] to mortgage trustees or their counsel and to all creditors who had already appeared in court", while "other creditors had to depend for their notice on two once-a-week publications of the order in five daily newspapers". The Supreme Court of the United States held that "publication of the bar order in newspapers cannot be considered 'reasonable notice' to New York under the circumstances of this case".

Similarly we hold that the notice in the case at bar cannot be considered as "reasonable notice" to Gillespie within the meaning of the term as used in Section 77, sub. c (8) of the Act, 11 U.S.C.A. § 205, sub. c (8). The Supreme Court stated in the opinion in the New York, New Haven and Hartford case that: "Notice by publication is a poor and sometimes a hopeless substitute for actual service of notice. Its justification is difficult at best. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865. But when the names, interests and addresses of persons are unknown, plain necessity may cause a resort to publication. See, e. g., Standard Oil Co. v. New Jersey, 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078. The case here is different. No such excuse existed to justify subjecting New York's claims to the hazard of forfeiture arising from 'constructive notice' by newspaper."

The Railway Company in the case at bar had a list of the holders of certificates of deposit of bonds in the Bankers Trust Company and other banks. "Reasonable notice" would require that notice by mail be sent to the address given for each listed holder. It is no answer to say that the Railway Company sent a letter to Gillespie and that the letter had been returned. That letter did not purport to set a "cut-off" date. Further, it was sent in August of 1943. If written notice of the "cut-off" date had been sent to the same address in May of 1944, or some subsequent time, it could well be that

Gillespie would have received it. The testimony showed that he received forwarded mail as late as 1946. Further, there is the likelihood that a letter sent to Gillespie in care of the Bankers Trust Company of New York might have reached him. Evidence showed that Gillespie had charge accounts at all leading department stores in New York; that he had been listed and rated in the Credit Bureau of Greater New York, and that there were other means through which he might well have been reached.

During the long course of the receivership and bankruptcy administrations, the Gillespie bonds were kept available to the Railway Company for the purposes of administration. The name of the owner was known and their physical custody was maintained as directed by the court. The fact that there had been some change in the owner's address might have been inferred from the return of the one registered letter sent to him, but there was no indication that he was fugitive or hiding and as his testimony showed, he could readily have been found and reached by mail. It does not appear that the court was ever advised of the fact that a letter had been sent to Gillespie and returned undelivered and it may well be that if the court had been so informed it would have directed that steps be taken to find him. The notice by publication alone was under the circumstances shown not "reasonable notice" to him of the bar order.

The trial court in its opinion stated that Gillespie "is charged constructively with all that subsequent inquiry would have revealed to him of the later course of events affecting the company whose securities he held". That contention is also fully answered by the Supreme Court in New York City v. New York, New Haven and Hartford Railroad Company, supra. That court stated, "Nor can the bar order against New York be sustained because of the city's knowledge that reorganization of the railroad was taking place in the court. The argument is that such knowledge puts a duty on creditors to inquire for themselves about possible court orders limiting the time for filing claims. But even creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred".

The judgment appealed from is reversed with direction to cause the Gillespie bonds to be exchanged in accord with the plan of reorganization.

SANBORN, Circuit Judge (concurring).

I agree that the rights of Gillespie under the plan of reorganization of the Fort Dodge, Des Moines & Southern Railroad Company were not cut off by the "bar order" in suit and that the judgment appealed from must be reversed. The cases of Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314–320, 70 S.Ct. 652, 94 L.Ed. 865, and City of New York v. New York, New Haven & Hartford Railroad Co., 344 U.S. 293, 73 S.Ct. 299, require a ruling that as to Gillespie, a bondholder of the railroad with a listed last known address and whose bonds were on deposit in the reorganization proceedings, service of the "bar order" by publication alone was inadequate. I think it is unnecessary to consider what efforts should or might have been made to find Gillespie and notify him of the order. Lack of adequate notice is determinative of the case.