**UNION SHOE AGENCY, INC., Appellant,**

**v.**

**BEACON SHOE MANUFACTURING COR-
PORATION and Mercantile Trust Compa-
ny National Association, Respondents.**

**No. 53654.**

Supreme Court of Missouri,
Division No. 2.

May 12, 1969.

Myron Gollub, Husch, Eppenberger,
Donohue, Elson & Cornfeld, St. Louis, for
plaintiff-appellant.

Fordyce, Mayne, Hartman, Renard &
Stribling, P. Terence Crebs, St. Louis, for
respondent Beacon Shoe Manufacturing
Corp.

MORGAN, Judge.

The trial court, pursuant to Rule 82.06,
V.A.M.R., entered a separate and final
judgment dismissing plaintiff's petition as
to one of two defendants. Plaintiff has
appealed.

Defendant Beacon Shoe Manufacturing
Corp. (herein referred to as Beacon) is
a foreign corporation not licensed to do
business in Missouri. It is engaged in
manufacturing shoes. Plaintiff Union Shoe
Agency, Inc. (herein referred to as Union)
acted as a distributor of some portion of
those shoes manufactured by Beacon.
From the abbreviated record presented, the
actual legal relationship of Beacon and
Union can not be determined. In any
event, the present controversy arose from

the efforts of both to supply shoes for the retail outlets of the J. C. Penney Company.

Union, as distributor, accepted and filled orders for shoes as submitted by Penney Company. Payment was made by the Penney Company to Union. After deducting expenses and service charges, the balance was forwarded to Beacon. When the Penney Company found defective shoes, they were returned to Union and an immediate refund was made. Union in turn charged such amounts to Beacon. Such charges against Beacon, with other items in adjustment, now amount to $30,181.43. Beacon denies the accuracy of such charges.

In an apparent effort to maintain their working arrangement and protect Union in its demands, the parties entered into an escrow agreement with the Mercantile Trust Company National Association (herein referred to as Mercantile) of the City of St. Louis. This agreement provided Beacon would deposit with Mercantile a United States Treasury Bond in the amount of $30,000, subject to the order of Mercantile, pending settlement of the dispute. Two specific provisions were:

"(c) That Mercantile shall hold the United States Treasury Bond in escrow until such time as it receives written instructions signed by both Union and Beacon as to the disposition of the [bond] or *until such time as either Beacon or Union presents Mercantile with a duly certified copy of a final judgment as to the disposition of the [bond] rendered by a Court of competent Appellate Jurisdiction or a Court of Original Jurisdiction from which no appeal has been taken.*

"(d) *That Mercantile upon receipt* of such written instructions from both Beacon and Union or *of such judicial decree or judgment dispose of the [bond] or its proceeds in the manner directed* by Beacon and Union or *by such Court."* (Emphasis added.)

Subsequently, Union filed suit in the City of St. Louis for the charges mentioned

and named both Beacon and Mercantile as defendants. Personal service was had on Mercantile and service by mail was had on Beacon as provided in Rule 54.08, V.A.M.R. See also § 506.160 RSMo 1959, V.A.M.S. (All references are to this statutory revision.) The present record does not have the responsive pleading, if any, filed by Mercantile. However, Beacon, appearing specially for the limited purpose of challenging the jurisdiction of the trial court, filed its Motion To Dismiss plaintiff's petition. The motion acknowledged receipt of the summons, with petition attached, by registered mail at Beacon's principal office in the State of Pennsylvania. The existence of the fund in the possession of Mercantile was admitted. After asserting " * * * the said fund has neither been attached nor garnished so as to be before the Court * * *," Beacon contends, "That since the Court had not acquired jurisdiction over the fund or res, as aforesaid, this Court could not acquire jurisdiction by means of service by mail over this defendant."

The trial court sustained the motion " * * * for lack of jurisdiction of the person [Beacon]. * * *" From this specific finding, plaintiff has appealed.

■ Admittedly, the "fund" ($30,000) was within the territorial jurisdiction of the trial court, and the sole issue submitted raises this question—What actual dominion over or control (in a jurisdictional sense) must a trial court have of an asset located in Missouri, but owned by a nonresident, to authorize substituted service of process on such a nonresident? Beacon contends there must be an actual seizure of the "fund" or res by attachment or garnishment, while Union argues that service of process upon Mercantile (the stakeholder) effectuated a seizure of the fund or res it held as escrow agent for the parties. That there must be some degree of jurisdictional control of the asset by the trial court is long established. See the landmark case of *Pennoyer v. Neff, 95 U.S.*

714, 24 L.Ed. 565. In this instance, we need not review the development of this principle other than to mention two of the historical reasons often advanced in support of it. *First,* if possible, a defendant should have actual notice of the action taken against him by substituted service, and "The Law assumes that property is always in the possession of its owner, in person or by agent; and it proceeds upon the theory that its seizure will inform him * * * that it is taken into the custody of the court. * * *" Pennoyer, supra, page 727, 24 L.Ed. 565. The latter reason is more applicable to service by publication, and its rationale is weakened somewhat where actual notice is given by registered mail. *Second,* if a trial court has not acquired jurisdiction over the actual res, its disposition or removal from the state might result in the court's action being an exercise in futility, and this "* * * would introduce an element of uncertainty into judicial proceedings. * * *" Beyer v. Continental Trust Company, 63 Mo.App. 521, 527.

Section 506.160(1) provides: "Service by mail or by publication shall be allowed in all cases affecting a fund, will, trust estate, specific property, or any interest therein, or any res or status within the jurisdiction of the court * * *."

Section 508.010(3) provides: "When there are several defendants, some residents and others nonresidents of the state, suit may be brought in any county in this state in which any defendant resides * * *."

Obviously, the instant action seeks to affect a "fund" as required by § 506.160(1), and if Mercantile is a proper party defendant, § 508.010(3) is applicable. In Durwood v. Dubinsky, 291 S.W.2d 909, 914, this Court held that a "stakeholder," such as Mercantile, was a proper party defendant. In that case, funds were deposited with Commerce Trust Company (in Missouri) to assure performance of contractual obligations between residents and nonresidents,

and it was held, l. c. 914–915 [2–3]: "Commerce Trust Company was obligated by the terms of the pledge agreement, a copy of which was attached to the petition, to deliver the pledged property to the Dubinsky brothers 'in the event of any default' by plaintiff of his obligations under the contract, and to return the pledged property to plaintiff if he did not default. Under the circumstances here, a claim by the Dubinsky brothers that plaintiff had not paid to them the compensation due under the contract was in itself a claim against the pledged property. If Commerce Trust Company was not made a party it would not be bound by the judgment entered, Section 527.110, and even if it claimed merely as a stakeholder it had a right and interest in knowing to whom to deliver the property. State ex rel. and to Use of Clay County State Bank v. Waltner, 346 Mo. 1138, 145 S.W.2d 152. It was a proper party defendant. Section 508.010 provides that when there are several defendants, some residents and others nonresidents of the state, which was the situation here, suit may be brought in any county of this state in which any defendant resides." The Durwood case is so factually similar that it alone could be considered as controlling.

In St. Louis Southwestern Railway Co. v. Meyer, 364 Mo. 1057, 272 S.W.2d 249, 252, 46 A.L.R.2d 964, this Court considered the same question. Dividends of plaintiff became a subject of dispute between its preferred and common stockholders, and plaintiff deposited such funds into a special account with a depository within the territorial jurisdiction of the Court, and then filed an interpleader action. Some of the stockholders were nonresidents. On the point in question here the Court held: "* * * it is, undeniably, a 'fund,' 'specific property,' or a 'res' and, indisputably, was and is indeed, a tangible thing 'within the jurisdiction of the court' now and when this proceeding was instituted and plainly, within the meaning of the statute, authorized service by publication upon nonresident defendants." It is true, as Beacon

suggests, that the fund was later placed in the registry of the court, but the decision was on the basis indicated.

In State v. Goodbar, Mo., 297 S.W.2d 525, 527, an escheat action by the state to recover excess insurance premiums resulting from litigation in the federal courts, it was held: "The unclaimed premiums, collected in Missouri and now in the registry of the United States District Court, constitute a fund or a res and authorize service of process by publication upon nonresident and unknown defendants."

The case of Security Savings Bank v. California, 263 U.S. 282, 44 S.Ct. 108, 68 L.Ed. 301, is in point. The petition sought to escheat abandoned deposits held by the bank. After declaring, " * * * the essentials of jurisdiction over the deposits are that there be seizure of the *res* at the commencement of the suit; * * *" the court then held: "Seizure of the deposit is effected by the personal service made upon the bank."

In Standard Oil Co. v. New Jersey, 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078, the state asked that unclaimed dividends be escheated, and the Court, after citing the Security Savings Bank case, supra, held: " * * * personal service on appellant (Standard Oil Co.) effects a seizure of that obligation in just the same way that service on a bank is seizure of the deposit * * *."

■ Beacon suggests escheat cases are distinguishable because they are brought under specific statutes for the particular purpose, but we cannot agree. The procedural statutes, mentioned herein, are also designed to provide for service on nonresidents in particular cases. The judicial determination of what is a sufficient "seizure" rests on its own feet. We, again, rule that an escrow as "stakeholder" is a proper party to an action wherein the fund held by it may be affected. Whether or not it be as a plaintiff or defendant is of no significance. In either instance, the fund held by it, which is the subject of the suit, is within the jurisdiction of the court and this meets the requirement of "seizure," as such.

The case of Pulitzer Publishing Co. v. Current News Features, 8 Cir., 94 F.2d 682, relied on by Beacon, is not controlling. The result there turned on plaintiff erroneously designating the circuit clerk as garnishee in his individual capacity instead of as an official clerk of the court. In the instant case, Mercantile executed the escrow agreement under the same title it has been named as a party defendant.

As a last comment, we find that the primary authority submitted by Beacon, the Beyer case, supra, did not declare that garnishment or attachment were mandatory or exclusive procedures, but said, 63 Mo. App. l. c. 527: " * * * the writ of garnishment or attachment, *or other form of service on a party holding a fund which becomes the subject of litigation*, brings that fund into court, though the money remain in the actual custody of one not an officer of the court." (Emphasis added.)

Contrary to its ruling, we find that the trial court did have jurisdiction of the fund and that substituted service of process on Beacon in Pennsylvania was authorized. If Beacon declines to enter its general appearance, the action will be in rem and recovery by Union will be limited to $30,000. In such event, the excess $181.43 prayed for will be surplusage. If Beacon enters its general appearance, recovery will be limited only by the prayer of the petition. The order of dismissal should be set aside and the cause as to defendant Beacon reinstated on the docket. Beacon should be given the time provided by statute to file, or not file, a responsive pleading.

The judgment is reversed and remanded for further action consistent with this opinion.

All of the Judges concur.