C. E. Russell Oxford City Attorney 116 West Lincoln Wellington, Kansas 67152
Dear Mr. Russell:
As attorney for the city of Oxford, you request an opinion concerning the legality of proposed legislation which would authorize the transfer of an inactive bank deposit to the city treasury. You indicate that seventy years ago a petroleum company leased real property located in the city from numerous owners. Royalty payments to the owners were deposited in the Oxford bank (now the Winfield bank). This lease has continued to produce oil throughout the years in dwindling amounts, however royalty payments continue to be made annually by the petroleum company and deposited in the bank. The last distribution of a royalty payment from the bank account to the owners was made in 1957 and since that time neither the lessors or their heirs have sought to withdraw the funds nor have they indicated any interest in the fund. Consequently, there is more than $45,000 in the Winfield bank account.
Attempts to contact the owners and/or their heirs have proved futile and now the cost of locating the heirs will exceed the amount in the deposit fund. Both the city and the bank have requested legislation which would authorize the transfer of these funds to the city for its use.
1994 house bill no. 2698 provides, in relevant part, as follows:
 "Be it enacted by the Legislature of the State of Kansas:
 "Section 1. The First National Bank of Winfield, being in possession of account number 1244620 which account has a balance of $45,763.48 or more in it, is directed to pay an amount equal to the balance in such account on the effective date of this act being not less than the above amount to the city of Oxford to be used for municipal purposes.
 "The legislative purpose of this special act is to remedy a long existing problem concerning what has become known as the `Oxford community lease' and its proceeds. Such problem stems from an oil and gas mining lease made on March 10, 1924, between `the owners of various tracts of land in the city of Oxford' and a predecessor in interest of the Conoco oil company. Conoco now pays a royalty check once a year to such account, and such amount shall be remitted to the city of Oxford for municipal purposes as they accrue." (Emphasis added).
Our concern with this legislation focuses on two issues — the due process rights of the presumably unknown owners of the funds presently located in the bank and the right to receive future lease payments which will continue to be paid by the petroleum company. In effect, this legislation will not only authorize the escheat of the funds currently held by the bank but it will also effect an escheat of intangible personal property — the right to collect future payments from the lease — without any notification to persons who may have an interest.
Escheat means the reversion or forfeiture of property to the government upon the happening of some event or default. 27 Am.Jur.2d Escheat sec. 1. Escheat is regulated by statute and encompasses bank deposits.Delaware v. New York, 507 U.S. ___, 113 S.Ct. 1550, 123 L.Ed.2d 211
(1993). While the right of escheat belongs to the people of the state, the legislature may provide that escheated property shall go to some designated political subdivision of the state. 27 Am.Jur.2d Escheat
sec. 2.
In Kansas, an intestate decedent's property escheats to the state if there are no heirs. K.S.A. 59-514. However, before such property escheats, there is a judicial proceeding which provides notice and an opportunity to be heard to any person who may have an interest in the estate. K.S.A. 59-901 et seq. Furthermore, those funds are held for ten years after an administrator is appointed and the funds do not escheat to the state until the expiration of that period. K.S.A. 59-903.
Addressing the first issue concerning the due process rights of the owners of the funds presently located in the bank, it is clear that unclaimed bank deposits are subject to escheat and statutes so providing have been upheld if there exist adequate provisions for notification to the depositor and an opportunity for objecting to the transfer. StandardOil Company v. State of New Jersey, 341 U.S. 428, 71 S.Ct. 822,95 L.Ed.2d 1078 (1951), Security Savings Bank v. State of California,263 U.S. 289, 44 S.Ct. 108, 68 L.Ed. 301 (1923), Anderson National Bankv. Luckett, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944).
In Security Savings Bank, the Supreme court reviewed a statute which required the transfer of bank deposits that were unclaimed for twenty years. The statute required a judicial determination before the bank was obligated to turn over the funds.
 "The contract of deposit does not give the banks a tontine right to retain the money in the event that it is not called for by the depositor. It gives the bank merely the right to use the depositor's money until called for by him or some other person duly authorized. If the deposit is turned over to the state in obedience to a valid law, the obligation of the bank to the depositors is discharged. It is no concern of the bank whether the state receives money merely as a depository or takes it as an escheat.
 "Whether the [judicial] proceeding should be described as being in rem or as being quasi in rem is not of legal significance in this connection. In either case the essentials of jurisdiction over the deposits are that there be seizure of the res at the commencement of the suit, and reasonable notice and opportunity to be heard." Security Savings Bank, 44 S.Ct. at 110.
It is our opinion that in the absence of statutory provisions which protect the due process rights of the unknown owners in the bank deposit funds, house bill no. 2698 violates the fourteenth amendment to the United States constitution. However, these constitutional infirmities may be cured by requiring a judicial proceeding prior to the transfer of these funds with service of summons on the bank and service by publication on the unknown owners. The statute may also include a presumption that these funds are presumed abandoned after a certain period of time. (See K.S.A. 1993 Supp. 58-3902(a) for guidance on this issue). In the absence of evidence rebutting the presumption of abandonment, a court could then issue an order of escheat terminating the rights of all unknown owners in the bank funds and escheating the funds to the city.
As far as the second issue is concerned, regarding the future lease payments, it is clear that a state, subject to constitutional limitations, may use its legislative power to dispose of property, including intangible personal property, belonging to unknown persons.Standard Oil, K.S.A. 1993 Supp. 58-3910, 30A C.J.S. Escheat sec. 4.
In Standard Oil, the Supreme court upheld a New Jersey statute which provided that when an owner of personal property was unknown for 14 successive years, the property escheated to the state. Consequently, it is our opinion that a statute which seeks to escheat intangible personal property such as the right to receive future lease payments needs due process provisions similar to the provisions necessary to effect an escheat of the bank funds. While the unknown persons who have an interest in the bank funds will be the same persons entitled to the future lease payments, the notice and subsequent judicial proceedings must ensure that both rights are addressed.
Summarizing, it is our opinion that 1994 house bill no. 2698 violates the fourteenth amendment to the United States constitution because it does not provide due process protection for a person who may have an interest in the inactive bank deposit fund and a right to receive future lease payments. However, these infirmities may be cured by the inclusion of provisions which provide for a presumption of abandonment, a judicial determination of escheat of the fund and of the right to receive future lease payments with the concomitant provisions of notice and an opportunity to object.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Mary Feighny Assistant Attorney General
RTS:JLM:MF:jm